**MACK TRUCKS, INC.,**
**Plaintiff-Appellant,**

v.

**ARROW ALUMINUM CASTINGS**
**COMPANY, Defendant-Appellee.**

**No. 74–1441.**

United States Court of Appeals,
Fifth Circuit.

April 3, 1975.

Rehearing Denied May 9, 1975.

Burt DeRieux, Alfred B. Adams, III, Atlanta, Ga., for plaintiff-appellant.

James C. Hill, T. Cullen Gilliland, Atlanta, Ga., for defendant-appellee.

Before THORNBERRY, MORGAN and CLARK, Circuit Judges.

LEWIS R. MORGAN, Circuit Judge:

On December 6, 1968, in Atlanta, Georgia, a truck manufactured by plaintiff-appellant Mack Trucks, Inc. (hereafter "Mack") went out of control and struck a truck driven by Charles E. Slagle. Slagle suffered permanent brain damage and was totally disabled; a passenger in his truck was also injured. Four suits, none of which is involved in this appeal, were filed against Mack in Federal District Court for the Northern District of Georgia: two by Slagle and his wife, one by the passenger, and one by the owner of the truck driven by Slagle. Mack settled these suits, incurring an aggregate liability of $223,400.

Mack filed suit in April of 1971 in the same court against defendant-appellee Arrow Aluminum Castings Co. (hereafter "Arrow") to recover its total expenses in the four original suits, including attorneys' fees, court costs and interest. Service of process was made on Arrow, an Ohio corporation, under the Georgia "long arm statute," which provides in pertinent part:

> A court of this State may exercise personal jurisdiction over any nonresident, or his executor or administrator, as to a cause of action arising from any of the acts, omissions, ownership, use or possession enumerated in this section, in the same manner as if he were a resident of the State, if in person or through an agent, he:
>
> (a) Transacts any business within this State; or

(b) Commits a tortious act or omission within this State, except as to a cause of action for defamation of character arising from the act . . ..

Ga.Code Ann. § 24–113.1 (1971).

The parties stipulated that the accident had been caused in part by the failure of a spring bracket cap manufactured by Arrow and incorporated by Mack into the truck. Whether this failure was caused by a defect in manufacture or design, and who bore responsibility for the part's failure, were not stipulated. Mack's case was built on a tort theory (that Arrow had been actively negligent in manufacturing the part while Mack had been only passively negligent) as well as contract theories (breach of express and implied warranties and liability under an indemnity clause on the reverse side of the order form for the cap [1]).

At the close of plaintiff's evidence, the district judge ruled that the court lacked in personam jurisdiction over Arrow as to Mack's contract theories. He therefore permitted the jury to consider only Mack's tort theory. For reasons explained below, we hold that the district court had in personam jurisdiction as to all of Mack's theories, and we reverse and remand for a new trial.

## I.

In a diversity case such as this one, a federal district court may exercise in personam jurisdiction over a foreign defendant only if a state court could do so in the proper exercise of state law, here the long arm statute. Erie R. R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); Arrowsmith v. United Press International, 320 F.2d 219 (2nd Cir. 1963); Stanga v. McCormick

Shipping Corp., 268 F.2d 544, 548 (5th Cir. 1959). Recognizing this, the district judge examined Georgia law, and determined that a Georgia court faced with this situation would rule that:

(1) Arrow, having allegedly committed a tortious act outside the state of Georgia (negligently manufacturing the spring bracket cap) which caused injury within the state, was subject to jurisdiction under § (b) of the statute as having allegedly "commit[ted] a tortious act or omission within this State; "

(2) Arrow was not subject to jurisdiction under § (a) since it could not be said to have "transact[ed] any business" in Georgia;

(3) . . . as the long-arm statute creates a substantive cause of action, independent long-arm jurisdiction must exist for each claim asserted, i. e. tort, breach of warranty, indemnity, etc. This results in a rule which forbids the "tacking" of other claims to one cause-of-action on which long-arm jurisdiction is predicated. Independent long-arm jurisdiction must exist for each claim asserted. (citations omitted).

The district judge concluded, therefore, that since Arrow's alleged tort gave rise to in personam jurisdiction only for tort claims, and since Arrow had not "transact[ed] any business" in Georgia, the court did not have in personam jurisdiction over Arrow as to Mack's contract claims.

In the absence of any Georgia court decision precisely on point, the district judge relied on several federal decisions holding that each section of the Georgia long arm statute allows the assertion of in personam jurisdiction only when

---

1. Paragraph nine of the order form provided: WARRANTIES AND INDEMNIFICATION—Seller warrants that (i) all material delivered hereunder shall conform to the specifications herein and any samples approved by Buyer as herein provided, (ii) all material delivered hereunder will be of the highest quality and free from defects (including defects in design when design is Seller's responsibility), . . . Seller agrees to indemnify and hold Buyer harmless against any and all liability whatsoever for damages and/or injuries which may be incurred by Buyer by reason of any defect in material (and/or design, if Seller's responsibility) delivered or furnished hereunder. . . ."

plaintiff's claim arises from certain specified conduct by the defendant. For example, in Scott v. Crescent Tool Co., Division of Crescent Niagra Corp., 296 F.Supp. 147, 152 (N.D.Ga.1969), the court held: (1) § (a) of the statute ("transacts any business") "applies to matters in contract, not to those sounding in tort;" (2) since the accident on which plaintiff's claim was based did not arise from the transaction of business but from a tort, the court had jurisdiction under § (b) of the statute, but not § (a).

There is a qualitative difference between the principle enunciated by the court in *Scott* and that propounded by the district judge in this case, although the inherent imprecision of language tends to obscure it. Essentially, *Scott* holds that when a nonresident commits a tort in Georgia, and recovery is sought for the consequences of that tort, jurisdiction for the cause of action exists under § (b), but may not be established under § (a), the transaction of business section of the long arm statute. *Scott* stopped short of holding, however, that a plaintiff, having established jurisdiction for his cause of action under § (b), is restricted to tort theories of recovery; rather, that is precisely what the district judge in this case held.

■ The question for decision is thus whether a Georgia court would construe "cause of action" in the long arm statute to embrace all legal theories of relief growing out of the jurisdiction generating event, or whether it would hold the phrase to embrace only such theories as concern the limited substantive area of the jurisdiction generating event, e. g., whether a "tortious act" gives rise to jurisdiction for all theories of relief related to that tort, or only for those which themselves sound exclusively in tort. We believe a Georgia court would choose the former interpretation.

Several factors lead us to this conclusion. In J. C. Penney Co. v. Malouf Co., 230 Ga. 140, 196 S.E.2d 145 (1973), the Georgia Supreme Court faced a factual situation strikingly similar to the one involved in this case. There, Penney had been sued by plaintiffs who alleged that they had been injured by products sold to them by Penney. Penney sought to bring in Malouf, the manufacturer of the products, as a third party defendant; in personam jurisdiction over Malouf was asserted under the long arm statute. Plaintiffs' theory of recovery against Penney sounded in tort while Penney sought indemnification from Malouf under a contract entered into at the time of the sale by Malouf to Penney. While the court's decision in the case dealt with applicability of an amendment to the long arm statute, its handling of Malouf's motion for rehearing is relevant to our problem. Malouf's contention was based on a reading of the long arm statute and Ga.Code Ann. § 81A–114(a) which provides that a defendant may bring in as a third party defendant "a person not a party to the action who is or may be liable to him for all or part of the plaintiff's claim against him." Malouf argued that since Penney had been sued in tort, and since Malouf could not be sued solely in tort, the indemnity contract was not "part of the plaintiff's claim" against Penney, and that therefore Malouf could not be made a third party defendant. The Georgia court thus faced the question of what "claim" in the third party practice statute should be read to mean when construed in conjunction with the long arm statute. In disposing of Malouf's contention, the court stated:

We hold that . . . a defendant can bring in a third party non-resident defendant if the third party defendant's liability to the defendant allegedly arises by virtue of the tort *or by virtue of a contract* between the defendant and the third party defendant *related* (for instance, indemnification) *to the tort forming the basis for the original action between the damaged plaintiff and the defendant.* . . . In such a situation the non-resident third party defendant's liability to the defendant arises by contract out of "the plaintiff's claim" against the defendant.

\*      \*      \*      \*      \*      \*

Our third-party practice statute and our Long Arm Statute, in combination, were devised and enacted for the purpose of reaching a party like Malouf and bringing it into a court in Georgia so as to get the issues among and between all the parties settled in one lawsuit. 230 Ga. at 145–146, 196 S.E.2d at 149 (emphasis supplied).

Had Mack brought in Arrow as a third party defendant, *Penney*'s factual setting would have been duplicated; in personam jurisdiction over Arrow would therefore clearly have existed as to Mack's contract claims. That Mack instead sought indemnification in a separate suit is to our eyes a difference without a distinction; *Penney* is conclusive evidence, in our opinion, that a Georgia court would interpret "cause of action" as used in the long arm statute in the same liberal fashion in which the state Supreme Court interpreted "plaintiff's claim" as used in the third party practice statute. In our case, this would result in the district court's having in personam jurisdiction as to Mack's entire "cause of action" including both tort and contract theories; the contract is "related to" the jurisdiction generating tort in precisely the same way in which the Penney-Malouf contract was "related to" the tort in that case.

Another recent Georgia case also leads us to hold that the jurisdiction conferred by the long arm statute embraces all theories of relief "related to" the jurisdiction generating event. In Coe & Payne Co. v. Wood-Mosaic Corp., 230 Ga. 58, 195 S.E.2d 399 (1973), the Georgia Supreme Court adopted the rationale of Gray v. American Radiator Standard Sanitary Corp., 22 Ill.2d 432, 176 N.E.2d 761 (1961) in holding that " . . . if damage occurred within the state then the tortious act occurred within the state within the meaning of subsection (b) of the Long Arm Statute." Coe & Payne Co. v. Wood-Mosaic Corp., 230 Ga. 58, 60, 195 S.E.2d 399, 400 (1973). The court then reversed the state court of appeals decision which had held that no jurisdiction existed over the nonresident manufacturers of a floor product either on the basis of the companies' having transacted business or committed a tortious act within Georgia. The suit involved both tort and contract theories of recovery in both claims and counterclaims for damages incurred in a fire allegedly caused by vapors given off by an adhesive used in laying the flooring. The court of appeals remanded the entire case for trial, in effect allowing the assertion of in personam jurisdiction as to all theories of relief arising out of the jurisdiction generating event, without regard to whether that event was the transaction of business or the commission of a tort.

If a Georgia court were to face the problem with which we deal in this case, we feel it would also be influenced by the universally broad construction which federal courts have given, in widely disparate contexts, to the phrase "cause of action" or the similar term "claim." For example, in Hurn v. Oursler, 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed 1148 (1933) the Court held that a district court, having found for the defendant on plaintiff's federal copyright infringement claim, nevertheless retained jurisdiction to decide the state law unfair competition claim. "The bill alleges the violation of a single right," the Court said,

namely, the right to protection of the copyrighted play. And it is this violation which constitutes the cause of action. Indeed, the claims of infringement and unfair competition so precisely rest upon identical facts as to be little more than the equivalent of different epithets to characterize the same group of circumstances. The primary relief sought is an injunction to put an end to an essentially single wrong, however differently characterized, not to enjoin distinct wrongs constituting the basis for independent causes of action. *Id.* at 246, 53 S.Ct. at 590.

Likewise, in American Fire and Casualty Co. v. Finn, 341 U.S. 6, 14, 71 S.Ct. 534, 540, 95 L.Ed. 702 (1950), in interpreting "claim or cause of action" as

used in 28 U.S.C. § 1441(c), the removal statute, the Court concluded that:

. . . where there is a single wrong to plaintiff, for which relief is sought, arising from an interlocked series of transactions, there is no separate and independent claim or cause of action (footnote omitted).

A similar broad construction has prevailed in still another context. In Backus Plywood Corp. v. Commercial Decal, Inc., 317 F.2d 339 (2d Cir. 1963), cert. denied 375 U.S. 879, 84 S.Ct. 146, 11 L.Ed.2d 110 (1963), the complaint was drafted in terms of three "causes of action," two in contract and one in tort. The district court granted summary judgment as to the contract "causes" and issued a certificate under Rule 54(b), F.R.Civ.P., stating that its decision was immediately appealable. Rule 54(b) however, is applicable only "[w]hen more than one claim for relief is presented," and the partial adjudication of a single claim is therefore not appealable even when a 54(b) certificate is issued. In holding the case non-appealable, the Second Circuit explained that

. . . the three "causes of action" in the complaint presented merely three different theories of recovery . . ..

"[A]ll of the facts on which plaintiff relies constitute but a single transaction composed of a closely related series of occurrences. . . . F.R. 54(b) cannot be used to appeal a part of a single claim or, as here, to test a single legal theory of recovery . . .." [quoting Schwartz v. Eaton, 264 F.2d 195, 196 (2d Cir. 1959)] 317 F.2d at 341.[2]

## II.

Appellant's second contention is that the district court erred in qualifying the jury as to Travelers Insurance Company, and in removing a venireman who was an agent of Travelers.

■ It is undisputed that Travelers had insured Mack under a liability policy, and had paid the settlements in the four original lawsuits. Under the Georgia rule, the jury must be qualified as to an insurer if the company has a "pecuniary interest" in the outcome. Atlanta Coach Co. v. Cobb, 178 Ga. 544, 174 S.E. 131 (1933). Mack alleges, however, that the policy was of a variety known as "retrospective risk," which required Mack to repay to Travelers any amount extended by Travelers to cover Mack's liability. Indeed, Mack alleges that it had already repaid all amounts paid out by Travelers at the time of trial and that the insurer therefore had no pecuniary interest in the outcome. Mack's counsel, however, did not make these allegations until the commencement of voir dire; in fact, Mack's proposed pretrial order stipulates that the jury should be qualified as to Travelers.

■ Under the circumstances, we need not decide whether the court erred in so qualifying the jury. We merely note that, upon remand, the exact nature of the insurance policy should be determined. The jury should be qualified as to Travelers only if it is shown to have a pecuniary interest in the outcome of the suit.

■ The judgment of the district court is reversed and the cause is remanded for a new trial.[3]

2. See also Perma Research and Development Co. v. The Singer Co., 410 F.2d 572 (2d Cir. 1969) (if plaintiff will be limited to a single recovery, only a single "claim" is involved); CMAX, Inc. v. Drewry Photocolor Corp., 295 F.2d 695, 697 (9th Cir. 1961) ("The word 'claim' in Rule 54(b) refers to a set of facts giving rise to legal rights in the claimant, not to legal theories of recovery based upon those facts.")

3. A new trial on only some of the issues in a case may be ordered only if the issues to be retried are so distinct and separable from the other issues that trial of them alone clearly may be had without injustice or prejudice to either party. Vidrine v. Kansas City Southern Ry. Co., 466 F.2d 1217 (5th Cir. 1972). Where, as here, the issues are so closely related and originate in the same set of factual occurrences, a partial retrial is inappropriate. We note our disappointment that the able district judge did not allow the jury to pass on all Mack's claims, and then grant a judgment notwithstanding the verdict if he felt it necessary. Had he done so, we could simply reinstate that jury verdict.