980 F.2d 663
 Daphne CRONIN, Plaintiff-Appellant, Cross-Appellee,
v.
WASHINGTON NATIONAL INSURANCE COMPANY, Defendant-Appellee,
Cross-Claim-Plaintiff, Cross-Appellant,
William Cargill, Jr., Defendant-Appellee,
Cross-Claim-Defendant, Cross-Appellant,
Alexander Dane, Jennifer Wills, Third-Party Defendants.
Daphne CRONIN, Plaintiff-Appellee,
v.
WASHINGTON NATIONAL INSURANCE COMPANY, Defendant-Appellant,
Cross-Claim Plaintiff,
William Cargill, Jr., Defendant-Appellant, Cross-Claim Defendant,
Alex Dane, Jimmy Wills, Third-Party Plaintiffs.
 Nos. 90-4149, 91-3165 and 91-3293.
 United States Court of Appeals, Eleventh Circuit.
 Jan. 4, 1993.
 
 J. Scott Murphy, E. Clay Parker, Parker, Johnson, Owen, McGuire, Michaud & Hadley, Elmo R. Hoffman, Brownlee, Hoffman & Jacobs, Orlando, Fla., for Daphne Cronin.
 Melvin B. Wright, John L. Sewell, W. Cargill, Guerney & Handley, Orlando, Fla., for Washington Nat. Ins. Co.
 Barry W. Rigby, John A. Shughart, Jr., Shughart & Bergholtz, Ronald M. Schirtzer, Foley & Lardner, van den Berg, Gay, Burke, Wilson & Arkin, Orlando, Fla., for appellees.
 Appeals from the United States District Court for the Middle District of Florida.
 Before ANDERSON and COX, Circuit Judges, and RONEY, Senior Circuit Judge.
 ANDERSON, Circuit Judge:
 
 
 1
 Appellant, Daphne Cronin, and cross-appellants Washington National Insurance Company and William Cargill appeal from various aspects of a jury verdict in favor of Cronin. For the reasons that follow, we affirm in part, reverse in part, and remand.
 
 I. BACKGROUND
 A. The Relevant Facts
 
 2
 Daphne Cronin, a Canadian citizen residing in Massachusetts, was competing for a spot on the Canadian Olympic Equestrian team. In 1984, she arranged for group health insurance for herself and her employer with William Cargill, an insurance broker licensed in Massachusetts. After she was forced to stop working in order to maintain her amateur status, Cronin contacted Cargill to inquire about an individual health policy. Through Cargill, Cronin applied for permanent health insurance, but was rejected by one of Cargill's three regular carriers because of her high-risk equestrian activities. The only other policy available from Cargill's regular carriers was a six-month, nonrenewable major medical policy offered by Washington National Insurance Company. This policy, known as the "Intermed" policy, was intended to be used as temporary, interim coverage only.
 
 
 3
 From March, 1986 until September, 1987, Cargill sold Cronin a series of four Intermed policies; each was approved by Washington National. The fourth policy expired on March 1, 1988. On March 5, 1988, Cronin was seriously injured in a horseback riding accident in Altoona, Florida, and rendered a quadriplegic. When her father arrived in Florida on March 7, he was notified by hospital personnel that there was a problem with Cronin's health insurance. He telephoned Cargill in Massachusetts, who confirmed that there was a problem, but said that he thought he could "fix it" if someone brought him a check. Later that day, Cronin's friend Alexandra Dane delivered a check for $217.14, the Intermed policy premium, and dated and signed the application that Cargill had already completed. As Cargill directed, Dane backdated both her check and the application to March 1, 1988; Cargill also set his postage meter to March 1, 1988.
 
 
 4
 An employee of Washington National testified that Cronin's fifth Intermed policy application was rejected for two reasons: internal company guidelines prohibited the issuance of more than a year of continuous Intermed coverage without a three-month break, and it was apparent that Cronin herself had not signed the application.[1] Washington National refused to pay any of Cronin's medical expenses.
 
 B. The Proceedings Below
 
 5
 Cronin sued Cargill for breach of an oral contract to procure insurance, and Washington National on the theory that Cargill acted as its actual or apparent agent. Cronin also claimed that Cargill was negligent in that he failed to procure insurance to cover the March 5 accident as he had promised on March 7, failed to timely notify her of his inability to procure insurance, failed to notify her before her fourth policy expired, and failed to obtain insurance that would be appropriate for her long-term needs. Washington National cross-claimed against Cargill, alleging that if it was liable at all, its liability was secondary to that of Cargill. In a bifurcated trial, the jury returned verdicts for Cronin against Cargill and Washington National, and for Cargill against Washington National on Washington National's cross-claim. The jury also found that Cargill was negligent, but Cronin was twenty-five percent comparatively negligent. During the damages phase of the trial, the district court entered a partial directed verdict in favor of Cargill on Cronin's claim for future damages. Damages were assessed at $203,000; the district court deducted twenty-five percent because of Cronin's comparative negligence, and entered judgment for $152,250. The district court refused to reduce the award on account of the benefits received by Cronin from collateral sources. The district court later awarded Cronin $10,393.64 in costs and $60,900 in attorney's fees. Both Washington National and Cargill moved for judgment notwithstanding the verdict; the district court denied the motions. All three parties appealed.
 
 II. DISCUSSION
 A. The Claim Against Washington National
 
 6
 At trial, Cronin claimed that Washington National was liable for Cargill's breach of an oral contract to insure because Cargill was Washington National's actual or apparent agent. We find that there was insufficient evidence presented at trial to support either conclusion. Mass.Gen.L. ch. 175, § 162 distinguishes between insurance agents, who represent insurance companies, and insurance brokers, who represent clients in obtaining insurance. Cargill was a licensed insurance broker, not an agent. Furthermore, Cargill's brokerage commission agreement with Washington National provided:
 
 
 7
 No authority is granted to make, alter or discharge contracts for the company or for the general agent, or to waive forfeitures, grant permits, name special rates, or bind the company in any way, or under any circumstances to receipt for deferred or renewal premiums, or make any endorsements on the policies of the company, or to receive any monies due or to become due to the company.
 
 
 8
 The brokerage agreement specifically stated that Cargill was not authorized to enter into contracts on behalf of Washington National. It is clear that Cargill did not act as Washington National's actual agent when he allegedly agreed to provide Cronin insurance covering an accident that had already occurred.
 
 
 9
 We also conclude that there was insufficient evidence to support the jury's verdict on the theory that Cargill acted with apparent authority. Apparent or ostensible authority might result from conduct by Washington National as principal which caused a third person, Cronin, reasonably to believe that a particular person had authority to make representations as its agent. If Cronin had changed her position in reliance on her reasonable belief, the principal would be estopped from denying that the agency was authorized. Hudson v. Massachusetts Property Ins. Underwriting Ass'n, 386 Mass. 450, 436 N.E.2d 155, 159 (1982).[2] Washington National had no contact with Cronin or her father until after Cargill's March 7, 1988 promise with respect to procuring insurance for her. Cargill had no Washington National signs, letterhead, business cards, or other similar indicia. The only materials that Washington National provided Cargill were blank Washington National insurance application forms. Cronin argues, and the district court found, that Washington National's acceptance of four consecutive Intermed policy applications created a jury question as to whether Cronin reasonably believed that she would receive another policy simply by tendering the premium to Cargill. We disagree. The evidence showed that Cronin understood that each policy had to be separately applied for and approved by Washington National. The fact that Washington National had issued four Intermed policies to Cronin did not obligate it to approve a fifth application. Washington National did nothing that would cause Cronin reasonably to believe that Cargill was its agent; Cargill's own representations could not create apparent agency. The district court should have granted Washington National's motion for judgment notwithstanding the verdict; therefore, the judgment against Washington National is reversed.[3]
 
 B. The Contract Claim Against Cargill
 
 10
 Cronin alleges that Cargill breached an oral contract to procure insurance that he formed with Cronin through her agent and father, Dr. Patrick Cronin, when Dr. Cronin telephoned Cargill following his daughter's accident. Dr. Cronin testified that after a hospital representative alerted him that there was a problem with Daphne's insurance, he telephoned Cargill in Massachusetts. Cargill asked Dr. Cronin to get him a check for "a little over two hundred dollars." Dr. Cronin testified:
 
 
 11
 Well, I said is that, what difference will the check make? And he said well, I think I can fix it. And I said does that mean that Daphne will get her benefits, and he said yes. He said when can Mrs. Dane bring me the check? ... I said what about this insurance, what sort of insurance is it and what will it cover? And he says, he said it's a very good policy, it pays a million dollars. And I said well, what, you know, what's the company, and he said it's Washington National and they're a very good company.
 
 
 12
 We do not believe that this exchange amounted to an oral contract to procure insurance. In response to Cargill's request for admissions, Cronin admitted that when she applied for the previous policies, Cargill had told her that Washington National might deny her application and refuse to issue her a policy. She also admitted that she knew when she made her applications to Washington National that Washington National had the authority to approve or deny the applications. The parties' past course of conduct gave no indication that Cargill had the authority to bind Washington National to an insurance contract. Moreover, it was clear to Dr. Cronin that Daphne's fourth insurance policy had expired.[4] Finally, Dr. Cronin knew at the time of his crucial conversation with Cargill that the loss had already occurred and that Cargill was contemplating backdating the check which would accompany the insurance application. In light of all the circumstances, including the common sense knowledge that no insurance company would ordinarily contract to insure a pre-existing loss, we cannot conclude that Cargill's comments to Dr. Cronin amounted to a contract to procure insurance for Daphne Cronin. Therefore, the district court should have granted Cargill's motion for judgment notwithstanding the verdict on the contract claim against Cargill.
 
 C. The Negligence Claims Against Cargill
 
 13
 Cronin claims that Cargill was negligent in failing to find insurance that would adequately meet her long-term needs (the negligent procurement claim), and that Cargill was negligent in failing to notify her before her fourth policy expired and assist her in obtaining a renewal.[5]
 
 
 14
 1. The Negligent Procurement Claim Against Cargill
 
 
 15
 With respect to the negligent procurement claim, the district court directed a verdict for Cargill on the issue of future damages, finding that Cronin had not laid a proper predicate for the admission of evidence of other insurance policies that were available to her. The district court found that Cronin's expert, Gordon Anthony, who admitted that he had no underwriting experience, was not qualified to testify that other insurance was available to Cronin.[6] In effect, the district court directed a verdict on the negligent procurement claim. An essential element of negligent procurement in Florida is that the plaintiff would have been accepted into another insurance program and would have prevailed on a claim under the other policy at trial. D.R. Mead & Co. v. Cheshire of Florida, Inc., 489 So.2d 830, 831 (Fla.App.1986).
 
 
 16
 Trial judges enjoy broad discretion when deciding whether to accept the testimony of expert witnesses; an appellate court will not second guess the trial court's judgment absent abuse of discretion. Increase Minority Participation by Affirmative Change Today, Inc. v. Firestone, 893 F.2d 1189, 1195 (11th Cir.), cert. denied, Secretary of Florida v. Walker, --- U.S. ----, 111 S.Ct. 133, 112 L.Ed.2d 100 (1990). We do not believe that the district judge abused his discretion when he excluded the testimony of Cronin's insurance expert. As Cronin concedes, if that testimony is stricken there is no basis for an award of future damages. The district court's directed verdict on the issue of future damages, and in effect on the negligent procurement claim, is affirmed.
 
 
 17
 2. The Negligent Failure to Warn Cronin and Assist her in Obtaining Renewal
 
 
 18
 Cronin also claims that Cargill negligently failed to warn her that her fourth Intermed policy was about to expire, and assist her in obtaining a renewal thereof. As Cargill points out, there is no statutory duty to notify an insured party of an insurance policy's pending expiration. As Cronin conceded at trial, the policy itself did not place such a duty upon Cargill. However, it was undisputed that Cargill had contacted Cronin before each of her other three policies expired, and had solicited her application for a new policy at that time. "It is axiomatic that an action undertaken for the benefit of another, even gratuitously, must be performed in accordance with an obligation to exercise reasonable care." Barfield v. Langley, 432 So.2d 748 (Fla.App.1983). The jury could have found that Cargill assumed the duty to notify Cronin each time her insurance policy was about to expire.
 
 
 19
 At trial, Cargill testified that he telephoned Cronin's house in Massachusetts before her fourth policy expired. Cargill spoke to the tenants who were renting Cronin's house while she competed in Florida and South Carolina. They gave Cargill an address in South Carolina; he sent a letter to "Daphne Cronin, 607 Banks Mill Road, South Carolina." The letter was returned by the post office; Cargill filed the letter away and did nothing further to contact Cronin. We believe that a reasonable jury could have found that Cargill was negligent. The address Cargill was given did not have a city or zip code. The jury could have found that he should have called Cronin's house again or contacted Cronin's friend, Arlene Full, whom Cargill knew well, to get a more complete address or to leave a message for Cronin.
 
 
 20
 Furthermore, the jury could have found that had Cronin herself completed an application before her fourth Intermed policy expired, Washington National would have issued a fifth policy, despite its internal guidelines. Washington National had already violated its guidelines twice before. Thus, a reasonable jury could find that Cargill's breach was the proximate cause of Cronin's damages.
 
 
 21
 For the foregoing reasons, we affirm[7] the judgment in favor of Cronin and against Cargill on the claim that Cargill negligently failed to warn Cronin that the policy was about to expire and assist her in obtaining a renewal.[8]D. Personal Jurisdiction Over Cargill
 
 
 22
 Cargill argues that the district court did not have personal jurisdiction over him. In order to ascertain whether personal jurisdiction exists, a federal court sitting in a diversity case must first look at the applicable state statute, and then at federal due process requirements. Pesaplastic C.A. v. Cincinnati Milacron Co., 750 F.2d 1516, 1521 (11th Cir.1985). Federal courts are "bound by state law concerning the amenability of a person or a corporation to suit, so long as state law does not exceed the limitations imposed by the Due Process Clause of the Fourteenth Amendment." Id. at 1521, quoting Washington v. Norton Manufacturing, Inc., 588 F.2d 441, 444 (5th Cir.), cert. denied, 442 U.S. 942, 99 S.Ct. 2886, 61 L.Ed.2d 313 (1979). Accordingly, we look first to the Florida long-arm statute, Fla.Stat. § 48.193, for guidance.
 
 
 23
 Cronin alleged that jurisdiction over the contract claim was proper under § 48.193(1)(g).[9] We agree. Cronin alleged that Cargill entered into an oral contract to provide insurance coverage in Florida to a woman who was hospitalized in Florida. Cargill's failure to do so would be a breach of his obligation to perform acts required to be performed in Florida. The statutory requirements have been satisfied.
 
 
 24
 The due process analysis involves a two-part inquiry. In the first prong, we consider whether Cargill engaged in minimum contacts with the state of Florida. In the second prong, we consider whether the exercise of personal jurisdiction over Cargill would offend "traditional notions of fair play and substantial justice." Madara v. Hall, 916 F.2d 1510, 1515-16 (11th Cir.1990), quoting International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945).
 
 
 25
 We conclude that Cargill had sufficient minimum contacts with Florida so that personal jurisdiction over him was proper. Jurisdiction is proper where the defendant's contacts with the forum proximately result from actions by the defendant that create a substantial connection with the forum state. Madara, 916 F.2d at 1516. We find that the allegation that Cargill orally offered to obtain insurance for Cronin, who resided in Florida, supports the conclusion that Cargill purposefully availed himself of the benefits of Florida law, so that he could reasonably expect to be sued there. See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). Here, it was undisputed that Cargill spoke with Dr. Cronin, who was in Florida, over the telephone. Cargill arguably agreed to obtain insurance for Daphne Cronin, who was hospitalized in Florida. Although the facts presented at trial did not ultimately support Cronin's claim that an oral contract to procure insurance was formed, Cronin's allegations supported a finding that Cargill had purposefully availed himself of the benefits of Florida law.
 
 
 26
 Once it has been determined that sufficient minimum contacts with the forum exist, these contacts are considered in light of other factors to decide whether the assertion of personal jurisdiction comports with "traditional notions of fair play and substantial justice." Madara, 916 F.2d at 1517. The factors include the burden on the defendant in defending the lawsuit, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the states in furthering fundamental substantive social policies. Id. See also Asahi Metal Industry Co. v. Superior Court of California, 480 U.S. 102, 113, 107 S.Ct. 1026, 1033, 94 L.Ed.2d 92 (1987).
 
 
 27
 We note that Florida's interest in resolving a dispute over a contract pursuant to which insurance benefits would be provided to a patient in a Florida hospital is substantial, as is Cronin's interest in obtaining relief. The inconvenience caused to Cargill, while not insignificant, does not outweigh the factors that mitigate in favor of the district court's exertion of personal jurisdiction over him. Thus, personal jurisdiction over the contract claim was proper.
 
 
 28
 In Mack Trucks, Inc. v. Arrow Aluminum Castings Co., 510 F.2d 1029 (5th Cir.1975), the former Fifth Circuit found that the Georgia long-arm statute provided personal jurisdiction over the plaintiff's tort theories, but not his related contract theory. In reversing the district court, which had dismissed the contract claim from the case, the Fifth Circuit held that the Georgia long-arm statute "embrace[d] all legal theories of relief growing out of the jurisdiction generating event." Id. at 1032. In this case the Florida long-arm statute, which is similar to Georgia's statute, provides personal jurisdiction over the contract claim but arguably not the negligence claims.[10] However, because all of the claims arose from the same jurisdiction generating event, Cargill's alleged failure to provide Cronin with health insurance, the district court had personal jurisdiction over the entire case.
 
 E. The Issue of Damages Against Cargill
 
 29
 Cargill argues that Cronin did not present sufficient evidence to prove the amount of her damages. We disagree. During the damages phase of the trial, Cronin entered invoices totalling $283,193.00 into evidence. Her father testified that $203,698.81 was spent for hospital and doctor's charges, and for prescription medicine. A copy of the Intermed insurance policy was also entered into evidence. An insurance expert for Washington National testified that $74,676.64 in expenses would have been covered by the policy, and that up to $83,898.88 in expenses that were not itemized could have been covered.
 
 
 30
 Cronin responds, and we agree, that a plaintiff need not present expert testimony concerning which expenses would be covered by a particular policy. A lay jury is capable of reading the policy and evaluating invoices to decide which expenses would be covered.
 
 F. The Issue of Comparative Fault
 
 31
 Because we reverse the jury verdict as to the contract claims, the only remaining basis for recovery is Cronin's negligence claim. Therefore, we affirm the district court's order deducting twenty-five percent from the jury award, reflecting the fact that the jury found Cronin twenty-five percent comparatively negligent.
 
 G. The Issue of Collateral Sources
 
 32
 Fla.Stat. § 768.76 requires that a damage award be reduced to account for certain collateral sources of recovery.[11] Cronin received $13,352.58 in Social Security disability insurance payments and $7,500 from a private life and accident insurance policy. The statute specifically describes these payments as collateral sources. Therefore, the district court erred in failing to reduce Cronin's recovery by $20,852.58.[12] Cronin also received $47,481.50 in Medicaid payments. The statute specifically exempts Medicaid payments from consideration as collateral sources; accordingly, we decline to reduce Cronin's verdict to account for Medicaid payments made on her behalf.
 
 H. The Issue of Attorney's Fees and Costs
 
 33
 The district judge awarded Cronin attorney's fees in the amount of $60,900 pursuant to Fla.Stat. § 627.428, which provides for an award of attorney's fees upon rendition of a judgment against an insurer and in favor of a named insured.[13] Because we find that Washington National is not liable, and Cargill is only liable for negligence, the statute is not applicable to this case. The district court's order awarding Cronin attorney's fees is reversed.[14]
 
 
 34
 Cronin was also awarded costs in the amount of $10,393.64. The award included $5,640.25 in expert witness fees. However, it is settled that expert witness fees may not exceed the statutory per diem fee provided in 28 U.S.C. § 1821. Crawford Fitting Co. v. J.T. Gibbons, Inc., 482 U.S. 437, 107 S.Ct. 2494, 96 L.Ed.2d 385 (1987); Kivi v. Nationwide Mutual Insurance Co., 695 F.2d 1285 (11th Cir.1983). The per diem is $30.00 per day for the time the witness was in court or traveling to court. The district court's award of costs is reversed and remanded for a determination of the expert witness fees due Cronin in light of the statutory cap.[15]
 
 III. CONCLUSION
 
 35
 For the foregoing reasons, the judgment against Washington National is reversed. The judgment in favor of Cronin and against Cargill is affirmed, as reduced by Cronin's twenty-five percent comparative negligence. However, the district court erred in refusing to reduce the award by the $20,852.58 received by Cronin from collateral sources; the judgment of the district court is reversed to that extent. Finally, the judgment of the district court awarding attorney's fees is reversed, and the judgment with respect to costs is reversed to the extent that the expert witness fees awarded exceeded the statutory cap.
 
 
 36
 AFFIRMED in part, REVERSED in part, and REMANDED.
 
 COX, Circuit Judge, dissenting:
 
 37
 I join the majority opinion except for the part affirming the negligence verdict against William Cargill for failing to warn Daphne Cronin that her health insurance was about to expire; as to that part of the opinion, I respectfully dissent.
 
 
 38
 The majority correctly notes that Cargill had no statutory or contractual duty to notify Cronin of her policy's pending expiration. Nevertheless, the majority concludes that "[t]he jury could have found that Cargill assumed the duty to notify Cronin each time her insurance policy was about to expire." Maj. op. at 669. This holding adopts for Florida a significant rule of insurance law that finds no support in Florida's insurance case law. More significantly, the holding rests on a theory of negligence liability on which the jury was not instructed and which Cronin has not urged.
 
 
 39
 Nowhere in Cronin's amended complaint, the jury instructions or the parties' briefs is anything said about the assumption of a duty to notify an insured about the impending expiration of an insurance policy. Because the argument has never been made in this case, our court should not address it. Further, without an instruction on this principle of law, it cannot be assumed that the jury knew of such a principle.
 
 
 40
 The district court told the jury that an "agent or broker may be negligent for failing to inform an insured of the termination dates of a policy of insurance."[1] But the district court added that Cargill would not be liable if "Cronin knew or should have known the termination date of her policy."[2] The court explained Cronin's personal responsibility in this way:
 
 
 41
 The means of knowledge are ordinarily the equivalent in law to knowledge. If it is apparent from the evidence in the case that a person had information which would lead a reasonably prudent person to make inquiry through which he or she would surely learn certain facts, then this person may be found to have actual knowledge of those facts, the same as if he or she had made such inquiry and had actually learned of the facts.
 
 
 42
 That is to say the law will charge a person with notice and knowledge of whatever he would have learned upon making such inquiry as it would have been reasonable to expect that person to make under the circumstances.[3]
 
 
 43
 The instruction did not indicate that Cargill could have assumed a duty to inform Cronin notwithstanding Cronin's other "means of knowledge." To the contrary, the instruction explicitly limited the duty to situations in which an insured cannot fairly be expected to know her policy's expiration date without being told by her agent.
 
 
 44
 Under the instructions given to the jury,[4] no reasonable juror could have found that Cronin lacked the means to know when her policy would terminate. She kept a copy of the policy in her insurance file.[5] The termination date was clearly printed as part of the "Policy Schedule" in the policy package that she introduced at trial.[6] The schedule is printed in such a way that it is visible when one reads the cover page of the policy. Attached as the third page of the policy package is Cronin's completed application for coverage. The application is dated September 2, 1987, and the box indicating a 180-day policy term is checked. Also, Cronin had applied for the same type of policy from Washington National every six months from March 1986 through September 1987.[7]
 
 
 45
 Like the jury instructions, Cronin has been silent about an assumption-of-duty theory. Her amended complaint declared that Cargill "had a duty to notify" her, but it did not assert a basis for that duty.[8] In the parties' pretrial stipulation, Cronin referred to the alleged duty as part of her breach of contract claim, not her negligence claim.[9] In her submissions to this court, Cronin states that her "negligence claim against William Cargill is based upon his negligent failure to perform the task of procuring appropriate insurance."[10] She does not contend that Cargill, through his conduct, assumed a noncontractual duty to remind her that her policy would expire at the end of six months.
 
 
 46
 The majority cites a Florida appeals court case for the rule that "an action undertaken for the benefit of another, even gratuitously, must be performed in accordance with an obligation to exercise reasonable care." Barfield v. Langley, 432 So.2d 748, 749 (Fla.App.1983). The jury in the present case, however, was not instructed on this theory of liability. The district court carefully admonished the jury to base its verdict only "on the evidence that has been received and the law upon which you have been instructed."[11] Yet the majority affirms the verdict by speculating that the jury might have used a legal theory the jury never heard. The result is that an insurance agent is held liable for not tracking down a college graduate--who had not given the agent her current address--to remind her that her fourth consecutive six-month policy would expire in six months, on the date printed on the copy of the policy in her own insurance file.
 
 
 47
 I would hold that the district court should have directed a verdict in favor of Cargill on Cronin's negligence claim.
 
 
 
 [1]
 Alexandra Dane had signed the application "Daphne Cronin/ALD."
 
 
 [2]
 The parties stipulated that the contract issues would be decided under Massachusetts law
 
 
 [3]
 Because we find that Washington National was not liable on the contract claim, the trial court's denial of Washington National's cross-claim against Cargill is moot
 
 
 [4]
 Under Massachusetts law, the knowledge of an agent is imputed to his principal. De Vaux v. American Home Assur. Co., 387 Mass. 814, 444 N.E.2d 355, 358 (1983)
 
 
 [5]
 Cronin also presents two other negligence claims against Cargill: that Cargill was negligent in failing to procure insurance following the accident, and that Cargill was negligent in failing to inform her promptly when he discovered that he could not procure insurance for her. Both of these claims are frivolous and should not have been permitted to go to the jury
 
 
 [6]
 Cronin argues that with respect to the Massachusetts plans, underwriting experience was not required. However, her expert did not and could not testify that she would have been accepted by either plan
 
 
 [7]
 We have concluded that only one of Cronin's several theories of liability on the part of Cargill was supported by the evidence. However, where a jury returns a general verdict, a party seeking a judgment notwithstanding the verdict must demonstrate the failure of each alternative theory of liability supporting the judgment. King v. Ford Motor Co., 597 F.2d 436, 439 (5th Cir.1979). By contrast, a party seeking a new trial need only show that the evidence is insufficient to support one of the plaintiff's theories of liability. Id. In this case, Cargill did not seek a new trial, either in the district court or on appeal
 
 
 [8]
 The dissent suggests that the instant theory--that Cargill assumed the duty to notify Cronin that the policy was about to expire--was not fairly presented in the district court or conveyed to the jury in the instructions. We respectfully disagree. In the pretrial order, at 2-3, Cronin listed the following claim against Cargill: "Cronin alleges that on March 1, 1988, Cargill allowed a policy of insurance issued to Cronin by Washington National to terminate without being replaced even though he had been taking care of this for her every six months since September of 1986." We also conclude that the theory was fairly presented to the jury in the instructions. At one point the court instructed:
 The plaintiff also claims that the defendant, William Cargill, is personally liable to her ... because William Cargill negligently allowed her prior policy of insurance with Washington National to terminate without being replaced as she had relied upon him to prevent in prior years.
 R. 12 at 107 (emphasis added). In closing argument, counsel for Cronin relied upon the theory, arguing to the jury that Cargill had had a long-standing relationship with Cronin, that Cargill had contacted her in the past before each previous expiration and arranged for a renewal, and that Cronin had relied upon Cargill. R. 12 at 41-43. After a careful review of the record, including the pretrial order, the instructions as a whole, and the argument of counsel, we conclude that the theory was fairly presented to the jury.
 
 
 [9]
 Section 48.193(1)(g) provides:
 (1) Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself and, if he is a natural person, his personal representative to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts:
 (g) Breaching a contract in this state by failing to perform acts required by the contract to be performed in this state.
 
 
 [10]
 Because we hold that there is personal jurisdiction over the contract claim, we need not decide whether there was personal jurisdiction over the negligence claims
 
 
 [11]
 Fla.Stat. § 768.76 provides in pertinent part:
 (1) In any action to which this part applies in which liability ... is determined by the trier of fact and in which damages are awarded to compensate the claimant for losses sustained, the Court shall reduce the amount of such award by the total of all amounts which have been paid for the benefit of the claimant, or which are otherwise available to him, from all collateral sources; however, there shall be no reduction for collateral sources for which a subrogation right exists.
 (2) For purposes of this section:
 (a) "Collateral sources" means any payments made to the claimant, or made on his behalf, by or pursuant to:
 
 
 [1]
 The United States Social Security Act;
 
 
 [2]
 Any health, sickness, or income disability insurance
 (b) Notwithstanding any other provision of this section, benefits received under the Medicaid Program of Title XIX of the Social Security Act or from any medical services program administered by the Department of Health and Rehabilitative Services shall not be considered a collateral source.
 
 
 [12]
 We reject Cronin's argument against these reductions on the theory that there is a right of subrogation. Cronin has failed to persuade us that there is a right of subrogation under these circumstances
 
 
 [13]
 Fla.Stat. § 627.428 provides in pertinent part:
 (1) Upon the rendition of a judgment or decree by any of the courts of this state against an insurer and in favor of an insured of the named beneficiary under a policy or contract executed by the insurer, the trial court, or, in the event of an appeal in which the insured or beneficiary prevails, the appellate court, shall adjudge or decree against the insurer and in favor of the insured or beneficiary a reasonable sum as fees or compensation for the insured's or beneficiary's attorney prosecuting the suit in which the recovery is had.
 
 
 [14]
 Cronin's motion for attorney's fees on appeal is denied
 
 
 [15]
 We otherwise affirm the district court's award of costs
 
 
 [1]
 R.12 at 116
 
 
 [2]
 Id
 
 
 [3]
 Id. at 116-17
 
 
 [4]
 At another point in its jury charge, the district court said an insurance agent or broker has a duty to inform a client "in a timely manner" if the agent or broker is unable to procure insurance. (R.12 at 115.) This instruction focused on Cargill's attempt to have Cronin covered retroactively following her accident, not his failure to notify her of the fourth policy's expiration. As the majority has observed, the claim based on Cargill's post-accident conduct is frivolous
 
 
 [5]
 R.9 at 84
 
 
 [6]
 See Plaintiff's Exhibit 2
 
 
 [7]
 R.9 at 109-10
 
 
 [8]
 R.2-61 at 3 p 11.c
 
 
 [9]
 R.6-181 at 3
 
 
 [10]
 Appellant's Brief at 25
 
 
 [11]
 R.12 at 120 (emphasis added)