In re **BANCO LATINO INTERNATIONAL,** Debtor.

**BANCO LATINO INTERNATIONAL,** Plaintiff,

v.

**AMAZONAS INTERNATIONAL BANK, LTD.,** Defendant.

**Bankruptcy No. 94–10202–BKC–AJC. Adv. No. 94–0341–BKC–AJC–A.**

United States Bankruptcy Court, S.D. Florida.

Nov. 7, 1994.

Peter D. Russin, Meland & Russin, P.A., Miami, FL, for defendant.

John Hutton, Greenberg, Traurig, Hoffman, Lipoff, Rosen & Quentel, P.A., Miami, FL, for creditor American Exp. Bank Intern.

David C. Profilet, Profilet & Associates, John H. Genovese, Jenner & Block, Co–Counsel, Miami, FL, for Creditor's Committee.

Jose Casal, Holland & Knight, Miami, FL, for debtor/plaintiff.

Howard M. Camerik, Ruden, Barnett, McClosky, Smith, Schuster & Russell, P.A., Miami, FL, for trustee.

Jeffrey Beck, Trustee, Ruden, Barnett, McClosky, Smith, Schuster & Russell, P.A., Ft. Lauderdale, FL.

### MEMORANDUM ORDER DENYING MOTION TO DISMISS THE INTERNATIONAL SHOE FITS

A. JAY CRISTOL, Chief Judge.

■ The Debtor, BANCO LATINO INTERNATIONAL ("BLI"), initiated an adversary proceeding against the Defendant, AMAZONAS INTERNATIONAL BANK, LTD. ("Amazonas"), a banking institution organized under the laws of The Bahamas, to recover on an unpaid placement [1] that matured and became fully due and payable shortly after BLI filed its Bankruptcy Petition. Amazonas has moved to dismiss on grounds that *in personam* jurisdiction is lacking.

---

1. A placement, in international banking vernacular, is a transaction in which a bank places its excess liquidity in another bank at a stated interest rate with a designated maturity date. According to BLI, a placement does not involve the purchase of an instrument, but is documented only by written confirmation. The placement appears to be a close relative of the time deposit.

## FACTUAL BACKGROUND

The parties have submitted affidavits and other sworn proof in support of their respective positions. Relying upon the proferred evidence, the Court is able to resolve the jurisdictional issue without hearing testimonial evidence. The circumstances surrounding the subject transaction, as adduced from the parties' submissions, were as follows:

1. Carlos Munoz, a representative of the self-described "Amazonas family of banks," of which the Defendant is a member, made periodic visits to BLI in Miami to solicit and promote business activities between the banks.

2. The subject placement was a fruit of one such visit. At a May 1993 meeting at BLI's offices in Miami, Munoz initiated the idea of and persuaded BLI to make the placement with Amazonas. The amount of the placement was negotiated and agreed upon at the meeting. The term of the placement was also discussed at the meeting.

3. BLI wired the funds from its Miami headquarters to Amazonas' account at American Express Bank International in Miami. BLI confirmed the placement with a letter, which instructed Amazonas to make payment upon maturity by wiring funds to BLI's account at the Federal Reserve Bank of Miami.

4. Thereafter, Amazonas directed several phone calls to BLI to discuss renewal of all or part the placement. Amazonas also forwarded several letters to BLI regarding various aspects of the placement.

5. The placement was renewed, in part or in whole, four times. Upon each renewal, BLI consistently re-confirmed that repayment of the funds upon maturity was to be made in Miami. The first time the placement was partially renewed, Amazonas wired $2 million of principal plus accrued interest, as instructed, to BLI's account in Miami. Each subsequent occasion in which the remaining $3 million placement was renewed, Amazonas wired accrued interest to the same account in Miami.

6. Shortly prior to the placement's final maturity date, Amazonas met with BLI at its offices in Miami and engaged in discussions regarding repayment of the placement.

Other facts speaking to the general relationship between the parties are also germane to the jurisdictional issue:

7. The Amazonas family of banks and BLI developed a broad and multi-faceted business relationship dating back to October of 1992.

8. The parties' banking relationship included Amazonas' affiliate establishing a $2.5 million credit with BLI. In order to obtain the line of credit, the Amazonas banks engaged in continuous contact with BLI, and forwarded substantial financial information to BLI for credit evaluation purposes.

9. During the course of the relationship, BLI issued several letters of credit in Miami for the Amazonas banks.

The only jurisdictional fact disputed in the parties' submissions is BLI's assertion that repayment of the placement is due in Florida. Amazonas asserts that the placement is payable at its home office in The Bahamas. Amazonas' sworn statements to that effect, however, are conclusory, and belied both by the correspondence exchanged and the course of dealing between the parties.[2]

## ANALYSIS

 Ordinarily a Court's initial inquiry would address whether the facts alleged provide a basis for jurisdiction under the forum state's long-arm statute. The instant case, however, is an adversary proceeding attendant to a bankruptcy case. Because Federal Bankruptcy Rule 7004(d) provides for nationwide service of process in adversary proceedings, the local long-arm statute yields. *In re Chase & Sanborn Corp.*, 835 F.2d 1341, 1344 (11th Cir.1988), reversed on other grounds, 492 U.S. 33, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989) (holding that a debtor need not depend upon Florida's long-arm statute to obtain jurisdiction over an alien defendant).[3]

2. Even if the Court were to resolve the one disputed fact in Amazonas' favor, the balance of the facts is more than ample to support jurisdiction in this case.

3. The Court notes that even if it were to apply

■ The inquiry is therefore limited to whether maintaining jurisdiction over the defendant comports with the due process standards of the Federal constitution. *Id.*[4] The basic inquiry is whether the defendant has established "minimum contacts" with the forum such that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). A defendant's conduct in connection with the forum must be such that it would reasonably anticipate being hailed into Court there. *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). The focus of the inquiry is "the relationship among the defendant, the forum, and the litigation." *Shaffer v. Heitner,* 433 U.S. 186, 204, 97 S.Ct. 2569, 2580, 53 L.Ed.2d 683 (1977). This relationship must manifest itself in some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum, thus invoking the benefits and protections of its laws. *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958). The purposeful availment requirement examines whether the defendant's contacts with the forum are attributable to its own actions or are solely the actions of the plaintiff, *Asahi Metal Industries v. Superior Court of Solano County,* 480 U.S. 102, 109, 107 S.Ct. 1026, 1030, 94 L.Ed.2d 92 (1987), and "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts ..." *Burger King Corp. v. Rudzewicz,* 471 U.S.

462, 475, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985).

■ Resolution of the due process issue commands a two-part analysis. First, the Court must determine whether minimum contacts exist with the forum.[5] Next, the Court must consider several "other factors" to determine whether the assertion of jurisdiction would comport with concepts of fairness and justice consistent with due process. *Burger King,* 471 U.S. at 476, 105 S.Ct. at 2184; *Cronin v. Washington National Insurance Company,* 980 F.2d 663, 670 (11th Cir.1993).

## A. MINIMUM CONTACTS

■ In order to determine whether minimum contacts exist, all of the facts must be considered in the aggregate. There are no mechanical or "talismanic jurisdictional formulas" at the Court's disposal. *Burger King,* 471 U.S. at 485, 105 S.Ct. at 2189. "[t]he facts of each case must always be weighed." *Id.,* at 485, 105 S.Ct. at 2189. Based upon the facts before it, the Court has little difficulty concluding that Amazonas established minimum contacts with the forum within the meaning of *International Shoe* and its progeny.

The sufficiency of Amazonas' contacts with the forum is illuminated by numerous cases. In *Cronin,* the 11th Circuit found personal jurisdiction to lie against a Massachusetts insurance agent whose only contacts with Florida consisted of an oral contract to pro-

---

Florida's long-arm statute, the requirements of it would be easily met. Fla.Stat. § 48.193(1)(g) provides for jurisdiction over a defendant who is guilty of "[b]reaching a contract in this state by failing to perform acts required by the contract to be performed in the state." Florida caselaw applies subsection (1)(g) of the long-arm statute to a defendant who has failed to make payments due and payable in Florida. *Magic Pan International, Inc. v. Colonial Promenade,* 605 So.2d 563, 566 (Fla. 5th DCA 1992); *Gilbert v. Herne,* 544 So.2d 226, 227 (Fla. 3d DCA 1989); *Kane v. American Bank of Merritt Island,* 449 So.2d 974, 975 (Fla. 5th DCA 1984).

4. Although the Fifth Amendment governs a due process inquiry involving an alien defendant, most of the leading cases were decided under the Fourteenth Amendment, which primarily embod-

ies concepts of interstate federalism. While it has been noted that the due process concerns of the Fifth and Fourteenth Amendment are not precisely parallel, *Chase, supra,* at 1345, the principles established in the leading cases are uniformly relied upon in determining jurisdiction over an alien defendant.

5. When determining jurisdiction over an alien defendant, there are conflicting views as to whether the relevant inquiry expands beyond the borders of the forum state to examine the defendant's contacts with the entire United States. *In re Chase & Sanborn Corp., supra,* at 1345, N. 10. Because, however, all of the jurisdictional facts before the Court connect the Defendant with Florida, the Court need not determine which view is correct.

vide insurance to a Florida resident and a single telephone communication with the plaintiff's doctor. In *Williams Electric Company, Inc. v. Honeywell, Inc.,* 854 F.2d 389 (11th Cir.1988), antitrust defendants were held to answer to process in Florida merely by having travelled to the state to participate in a single meeting in which certain terms of the offending agreement were negotiated. In *Mellon Bank (East) PSFS, National Association v. Farino,* 960 F.2d 1217 (3d Cir. 1992), jurisdiction was proper against loan guarantors based upon facts similar (loan due in the forum, meetings in the forum, telephone and mail contacts directed to the plaintiff) to those present here. In short, Amazonas intentionally directed its activities to a Florida resident and promoted a business relationship. Amazonas' connection to Florida with respect to the unpaid placement is certainly neither random, fortuitous, nor attenuated.

▮▮▮ Amazonas' personal visits to BLI's offices in Florida weigh heavily in favor of jurisdiction. *Burger King,* 471 U.S. at 476, 105 S.Ct. at 2184 ("territorial presence frequently will enhance a potential defendant's affiliation with a State and reinforce the reasonable forseeability of suit there ...."). In fact, a single meeting in the forum state, standing alone, "may constitute 'purposeful availment' if it involves 'significant negotiations of important terms' " of the parties' agreement. *Complete Concepts, Ltd. v. General Handbag Inc.,* 880 F.2d 382 (11th Cir.1989); *Williams, supra,* at 392–393; *Sea Lift, Inc. v. Refinadora Costarricense de Petroleo, S.A.,* 792 F.2d 989, 993 (11th Cir. 1986). Presence in the forum to initiate, or solicit, the business transaction from which the dispute arose is also demonstrative of purposeful availment. *See, e.g., Schwartz v. Yo–Whip, Inc.,* 795 F.Supp. 869, 871 (N.D.Ill. 1992); *Source Associates, Inc. v. Suncast Group,* 709 F.Supp. 1023, 1025 (D.Kan.1989). Amazonas solicited and negotiated BLI's commitment to make the placement, and negotiated at least one important term of the placement—its amount—while present at

BLI's offices in Florida. Its "deliberate choice" to journey to Florida placed Amazonas "on notice that [it was] subject to suit in Florida." *Williams, supra,* at 393.

The telephone, telefax, and mail contacts that Amazonas directed to BLI in the forum also militate in favor of jurisdiction. *Burger King,* 471 U.S. at 476, 105 S.Ct. at 2184 ("[I]t is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within the state in which business is conducted."). Numerous courts have given meaningful bearing to telephone and mail contacts directed to the forum. *See, e.g., Mellon Bank, supra,* at 1223; *Hirschkop & Grad, P.C. v. Robinson,* 757 F.2d 1499, 1503 (4th Cir.1985); *Electronic Transaction Network v. Katz,* 734 F.Supp. 492 (N.D.Ga.1989).

▮▮▮ The unfulfilled obligation to make payment due in Florida, while not by itself dispositive, certainly redoubles Amazonas' expectation of being hailed into Court there. *Homestead Savings v. Ozark Financial Corp.,* 699 F.Supp. 1547 (S.D.Fla.1988); *A.I. Trade Finance, Inc. v. Petra Bank,* 989 F.2d 76 (2d Cir.1993) (Merely guarantying notes payable in New York was, by itself, sufficient to confer jurisdiction over a Jordanian corporation with no other ties to the U.S.); *Klein v. Federated Builders, Inc.,* 616 So.2d 623, 624 (Fla. 4th DCA 1993). The significance of this jurisdictional fact is buttressed by Amazonas actually having forwarded payments to BLI by wiring the funds into Florida. *See, Complete Concepts, supra,* at 389 (The mailing of commission checks to the forum indicates that the defendant's "bond with [the forum] was neither tenuous nor happenstance" and that defendant " 'should reasonably anticipate being hailed[6] into Court in [the forum]' "); *Hirschkop & Grad, supra,* at 1503; *Sheldon v. S & A Rx, Inc.,* 683 F.Supp. 1289, 1291 (E.D.Mo.1988).

In sum, the totality of the circumstances mandates the conclusion that minimum contacts are present in this case. Attention

---

**6.** Some Courts use "haled" others, like this one, use "hailed." According to the dictionary, either is correct.

must now be turned to the issue of whether maintenance of this suit is in concert with notions of fair play and substantial justice.

## B. FAIRNESS AND REASONABLENESS

 When determining whether jurisdiction lies over an alien defendant, the fairness and reasonableness of the venue is afforded special emphasis. *Chase, supra,* at 1345. Once minimum contacts are established, however, a presumption exists that jurisdiction is reasonable, and the burden is placed squarely upon the defendant to present a "compelling case" that jurisdiction would be unreasonable. *Burger King,* 471 U.S. at 478, 105 S.Ct. at 2185. It is recognized that "[w]hen minimum contacts have been established, often the interests of the plaintiff and the forum in the exercise of jurisdiction will justify even the serious burdens placed upon the alien defendant." *Asahi,* 480 U.S. at 114, 107 S.Ct. at 1033. To determine whether maintenance of a suit is fair and reasonable, the 11th Circuit has established that the following factors are to be considered:

(a) [T]he extent of the defendant's purposeful interjection into the forum state; (b) the burden on the defendant of defending in the forum; (c) the extent of conflict with the sovereignty of the defendant's state; (d) the forum state's interest in adjudicating the dispute; (e) the most efficient judicial resolution of the controversy; (f) the importance of the forum to plaintiff's interest in convenient and effective relief; and (g) the existence of an alternative forum.

*Chase, supra,* at 1345. Each factor is separately addressed below.

(i) *Extent of Defendant's purposeful interjection into Florida*

 The "purposeful interjection" factor is parallel to the minimum contacts analysis. *Sinatra v. National Enquirer, Inc.,* 854 F.2d 1191 (9th Cir.1988). It should be given "no weight once it is shown that the Defendant purposefully directed its activities to the forum state." *Corporate Investment Business Brokers v. Melcher,* 824 F.2d 786, 790 (9th Cir.1987). The Court is convinced that Amazonas' actions satisfy this prong of the test.

(ii) *Burden on Defendant*

The Defendant has made no showing that defending this action in Florida would impose any meaningful burden on it. "Modern means of communication and transportation have lessened the burden of defending a lawsuit in a distant forum." *Chase, supra,* at 1346; *World–Wide Volkswagen,* 444 U.S. at 291, 100 S.Ct. at 564. Transportation between the Caribbean, South America, and Miami is readily available. *Chase, supra,* at 1346. It appears that the Defendant already makes periodic journeys to South Florida to advance its international banking activities. Amazonas obviously has access to telephone and telefax lines. *Id.* The Court simply cannot foresee any burden that would be compelling enough to overcome the presumption of reasonableness.

(iii) *Extent of conflict with a foreign sovereignty*

There is no evidence before the Court that Amazonas is in any way affiliated with the government of a foreign nation. Therefore, this leg of the analysis is easily disposed of.

(iv) *Local interest in adjudicating the dispute*

 It is axiomatic that a state has a manifest interest in providing effective means of redress for its residents when they have been harmed in a commercial transaction. *McGee v. International Life Insurance Co.,* 355 U.S. 220, 223, 78 S.Ct. 199, 201, 2 L.Ed.2d 223 (1957). Local interest is heightened in this case because the Plaintiff is a debtor in a bankruptcy reorganization, and thus the financial interests of non-participant third parties are at stake. *Chase, supra,* at 1346–1347 (acknowledging the substantial interest imbued upon a Bankruptcy Court to marshall assets of the debtor for the benefit of the estate). This Court obviously has a compelling interest in having this dispute before it.

**(v)** *The most effective judicial resolution of the controversy*

■ The situs of a debtor's bankruptcy case is a particularly efficient forum in which to litigate the debtor's individual disputes relating to its assets. *Chase, supra,* at 1347 ("The federal courts in the Southern District of Florida are familiar with the litigation aspects of the C & S reorganization and so would provide the most efficient judicial resolution to adversarial proceedings arising out of debtor's pre-bankruptcy transactions.") Moreover, because BLI's two primary witnesses are no longer under its employ, it appears that this Court is the only tribunal before which all of the evidence in this case can be presented.

**(vi)** *Convenient and effective relief for BLI*

In the event BLI prevails, its redress would be swift and certain, because Amazonas elected to "bond off" a preliminary injunction previously entered by this Court by posting a standby letter of credit in the full amount of the debt. The letter of credit, though, is payable only upon presentation of a Final Judgment rendered by this Court. Therefore, should this case be litigated in a distant venue, the convenience and effectiveness of BLI's relief against this self-described "offshore" entity may be severely compromised.

**(vii)** *Existence of an alternative forum*

The Defendant has not advanced the notion that a more suitable forum exists for the resolution of this dispute. It would appear from the evidence before the Court that there is no particular forum in which both BLI and Amazonas maintain a common presence. Thus, this factor exerts no influence upon the Court's analysis.

### CONCLUSION

Because minimum contacts are present, and there appear to be no countervailing much less overriding fairness concerns, maintenance of this suit is well within the bounds of due process. Accordingly, it is hereupon

**ORDERED AND ADJUDGED** that the Defendant's Motion to Dismiss on the personal jurisdiction issue is hereby DENIED.

**DONE AND ORDERED.**