J. Vance **HOLDAM, Jr.**, Defendant and Third-Party Plaintiff, Appellant,

v.

**MIDDLESEX SUPPLY, INC.**, et al., Appellees.

**ALBERT–HOPKINS, INC.**, Defendant, Appellant,

v.

J. Vance **HOLDAM, Jr.**, Plaintiff, Appellee.

Nos. 6453, 6509.

United States Court of Appeals First Circuit.

Heard Oct. 5, 1965.

Decided Jan. 21, 1966.

John D. Dwyer, Boston, Mass., for J. Vance Holdam, Jr.

Mack M. Roberts, Brookline, Mass., with whom Jerome E. Rosen, Boston, Mass., was on brief, for Middlesex Supply, Inc.

J. Owen Todd, Boston, Mass., with whom Edmund Burke and Hale & Dorr, Boston, Mass., were on brief, for Albert-Hopkins, Inc.

Before ALDRICH, Chief Judge, McENTEE, Circuit Judge, and WYZANSKI, District Judge.

McENTEE, Circuit Judge.

These are appeals from the District Court in three diversity suits arising out of the same basic facts. The parties involved are J. Vance Holdam, Jr., the owner of eleven large apartment buildings in Boston; Albert-Hopkins, Inc., a Boston real estate firm (hereinafter called A-H), which Holdam appointed as agent to manage these apartment buildings, and Middlesex Supply, Inc., a general contractor engaged by A-H to perform work for Holdam on said properties. The original suit (No. 6453) was brought by Middlesex against Holdam to recover the balance of $35,446.78 for work, labor and services. In this case Holdam filed a counterclaim to recover that portion of a payment of $28,000 made to Middlesex in December 1961 which he contends to be attributable to unauthorized work. Holdam also joined his agent A-H as a third party defendant for breach of its management contract with him and also for breach of fiduciary duty. In this action Holdam seeks to recover against A-H whatever amount Middlesex recovers against him. In another separate action, Holdam sued his agent A-H for damages. These three cases were tried together and the court submitted the claims and defenses of the parties to the jury through several special questions.[1]

In the original suit the jury answered that the full amount of Middlesex's claim was due. In answer to another special question, the jury found that no part of the $28,000 payment made by Holdam in December 1961 was for unnecessary or unauthorized work and the court directed that judgment be entered for Middlesex on the counterclaim. In the third party action a verdict was directed in favor of A-H and in the separate case of Holdam against A-H for damages the jury returned a verdict for Holdam in the amount of $7,500. Holdam is appealing from the judgment entered for Middlesex against him and from the action of the trial court directing a verdict in favor of A-H, the third party defendant. A-H is appealing from the judgment entered in favor of Holdam for $7,500 in the separate action.

The evidence shows that the work done by Middlesex was part of a program for the repair and renovation of these apartment buildings which began in the spring of 1961. After conferring with Holdam, A-H discussed this program with Middlesex and in April 1961 it was agreed that Middlesex would do a specified amount of work for $12,540 payable over a period of time in installments of not more than $2,000 per month. From the reading of this agreement it is clear that future

---

1. "(a) [as amended] What is the balance due for services rendered by Middlesex to Holdam?

When, if ever, prior to 7/16/62 did Middlesex first demand payment?

(b) Did Middlesex do unnecessary or unauthorized work for Holdam knowing it to be unauthorized by Holdam?

What part of the $28,000 paid on 12/31/61 represents the above?

(c) Did A-H falsely represent to Holdam in December of 1961 that whether or not Holdam authorized the work to be done, or knew it was done, that he, Holdam, was obligated to pay more than $63,000 to Middlesex, and did Holdam rely on that representation entirely and pay $28,000 on December 31st?

(d) Did Albert-Hopkins fraudulently represent to, or conceal from Holdam material facts during April 1, 1961 and November 1, 1961 with regard to the program of work or improvements on the Holdam properties?

(e) What was the amount by which Holdam was injured due to such fraudulent representations or concealment?"

work over and above that specified was contemplated. In the intervening months between April and November 1961, particularly in June and July, A-H ordered considerable additional work and by the end of October 1961 Middlesex had run up a bill of about $79,000. It is conceded that the work which Middlesex claims it did was in fact done.

■■ Holdam contends that the work done by Middlesex over this period of time was unnecessary, unauthorized and "overcharged." He claims that A-H exceeded its authority and that Middlesex knew or should have known that A-H exceeded its authority; that Middlesex was required to use reasonable prudence and discretion in arriving at its belief as to the authority of A-H and that Middlesex had a duty to inquire into the nature and extent of its authority. The court, with respect to this last, put a special question to the jury inquiring whether Middlesex did "unnecessary or unauthorized work for Holdam knowing that it was unauthorized by Holdam?" Holdam objected, stating that the question should read " * * * knowing *or having reasonable grounds to know* that it was unauthorized. * * * " This would not have been an appropriate phrasing of the question. We believe the Massachusetts law to be that the apparent authority of a general agent is what the third party reasonably believes it to be. Costonis v. Medford Housing Authority, 1961, 343 Mass. 108, 176 N.E.2d 25. Cf. Restatement (2nd) Agency §§ 27, 161, 135. There might be reasons why a third party could have believed that the authority was limited, and yet, at the same time, the third party might be entirely reasonable in believing that it was not limited. Holdam's suggested amendment of the special question would have stated the law too unfavorably to Middlesex.

■ However, Holdam's difficulties lie deeper. Examination of the record, and particularly of the written contract under which it was operating, shows clearly that A-H was a general agent having the power to order work of the type now in controversy. While there is evidence that there were oral limitations imposed by Holdam upon the exercise of this power, the evidence which would have warranted a finding that Middlesex had adequate notice of these limitations was essentially only in the form of a forecast of what Holdam wanted spent, which Middlesex could properly conclude, as time went on, had been revised. In view of the openness with which the work was being conducted over a considerable period of time, we think the only reasonable conclusion for Middlesex to draw was that A-H was in fact authorized. See Restatement, Second, Agency, sections 43, 94, 8B. It follows that there was no prejudicial error with respect to the judgments in Middlesex's favor.

■ We now turn to the claims of Holdam against his agent, A-H. While A-H made sufficient disclosure to Holdam to indicate that it was spending considerably more than Holdam had originally wished, the evidence would warrant a finding that its reports to Holdam were more optimistic than the facts. In Holdam's third party complaint against A-H, he claims that even if A-H was within its apparent authority in engaging Middlesex to the extent that it did, A-H negligently failed in its duty as agent to disclose currently to him what it was doing. He says that had A-H made such disclosures, he would have stopped A-H from spending such a large amount of money. There was evidence in the case upon which the jury could have so found, and in view of this, the trial court erred in directing a verdict for A-H in the third party suit. Unfortunately the trial court did not present a special question to the jury on the negligence issue. Under these circumstances, it would appear that under Rule 49 (a) Fed.R.Civ.P. this issue was left to the court. However, we feel it was the court's intention to submit all the issues to the jury and it would be a harsh result to send this case back now for a trial to the court. Accordingly, we will remand it for a new trial *by a jury* on

the issue of whether A-H was negligent with respect to Holdam and, if so, what damages he is entitled to recover. In the separate action of Holdam against A-H, however, we find no evidence which would warrant a finding of fraud, the only issue put to the jury. The verdict in favor of Holdam for $7,500 on that basis was clearly erroneous. There was, accordingly, nothing to support the action and a verdict should have been ordered for A-H.

Judgment will be entered affirming the judgments in favor of Middlesex Supply, Inc.; setting aside the verdict and judgment in favor of Albert-Hopkins, Inc. on Holdam's third party complaint and remanding said case for a new trial consistent with this opinion, and setting aside the verdict and judgment for $7,500 in favor of Holdam in his separate action against Albert-Hopkins, Inc., and ordering judgment therein for the defendant.