LORETTA R. DEVAUX *vs.* AMERICAN HOME ASSURANCE
COMPANY & another.[1]

Plymouth. September 17, 1982. — January 5, 1983.

Present: WILKINS, ABRAMS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Attorney at Law*, Negligence, Canons of ethics, Attorney-client relation-
ship. *Agency*, Scope of authority. *Negligence*, Attorney. *Practice*,
*Civil*, Master, Summary judgment.

In a legal malpractice action, summary judgment in favor of the attorney
defendant was not appropriate where the facts, as found by a master,
presented jury issues as to whether a secretary employed in the attor-
ney's office had actual or apparent authority on the attorney's behalf
to establish an attorney-client relationship with the plaintiff, which in
turn would have given rise to a duty on the part of the attorney to com-
mence a timely action on a personal injury claim of the plaintiff.
[817-819]

Discussion of an attorney's duty to supervise lay employees in a legal office
pursuant to the stricture against the unauthorized practice of law en-
compassed by the Canons of Ethics and Disciplinary Rules Regulating
the Practice of Law, S.J.C. Rule 3:07. [819-820]

CIVIL ACTION commenced in the Superior Court on Feb-
ruary 17, 1978.

A motion for summary judgment was heard by *Keating*,
J., and entry of judgment was ordered by *Steadman*, J.

After review was sought in the Appeals Court, the Su-
preme Judicial Court ordered direct appellate review on its
own initiative.

*Steven B. Rosenthal* for the plaintiff.

*Kevin P. Phillips* for Frank J. McGee.

*Erik Lund* (*Roberta F. Benjamin* with him) for American
Home Assurance Company.

---

[1] Frank J. McGee.

ABRAMS, J.  Injured in a fall, the plaintiff Loretta R. De-Vaux wrote a letter to the defendant, Attorney Frank J. McGee, requesting legal assistance in regard to a possible tort claim.  The defendant did not discover the plaintiff's letter, however, before the statute of limitations had run. Thereafter, the plaintiff sued the defendant attorney for malpractice, and the defendant's insurance company was impleaded as a third-party defendant.

Pursuant to Mass. R. Civ. P. 53 (a), 365 Mass. 817 (1974), a judge of the Superior Court appointed a master to hear this case.[2]  The master concluded that there was no privity and no attorney-client relationship between the plaintiff and the defendant attorney until after the statute of limitations had run.[3]  Thus, the master "recommended" that a finding be entered for the defendants.

Relying on an affidavit and the master's report, the defendants moved for summary judgment.[4]  See Mass. R. Civ. P. 56 (b), 365 Mass. 824 (1974).  The defendants alleged that the attorney did not learn of the plaintiff's request for his legal assistance until after the statute of limitations had run, and that, in these circumstances, there was no attorney-client relationship until that time.  The defendants asserted that, in the absence of an attorney-client relationship, the attorney had no duty to commence a timely action on behalf of the plaintiff.  Thus, the defendants claimed that they were entitled to judgment as a matter of law.

---

[2] The plaintiff had claimed a jury trial.

[3] The plaintiff moved to strike these conclusions.  The judge denied her motion.  Since these two conclusions resolve factual disputes which are more properly the function of the jury, on remand they should be struck from the master's report.  See *West* v. *First Agricultural Bank*, 382 Mass. 534, 540-541 (1981); *Corrigan* v. *O'Brien*, 353 Mass. 341 (1967).  We do not reach or decide any issue as to the remaining conclusions in the master's report.

[4] No counter affidavits were filed by the plaintiff.  If there are no genuine issues of material fact, a master's report in a jury trial case may support allowance of a motion for summary judgment.  Contrast *Vaught Constr. Corp.* v. *Bertonazzi Buick Co.*, 371 Mass. 553, 558-561 (1976).

The judge granted the defendants' motion and entered a judgment of dismissal against the plaintiff. See Mass. R. Civ. P. 56 (c), 365 Mass. 824 (1974). The plaintiff appealed to the Appeals Court. We transferred the case to this court on our own motion. The plaintiff claims that the judge erred in granting the defendants' motion for summary judgment because there are genuine issues of material fact relating to the existence of an attorney-client relationship. We agree and remand this case for trial in the Superior Court.

We summarize the facts found by the master.[5] On July 17, 1971, the plaintiff fell as she entered a Curtis Compact Store (store) in Hanover. The plaintiff claims that she suffered a serious back injury as a result of this fall. On May 11, 1973, the plaintiff was admitted to South Shore Hospital for removal of a spinal disk.

A few days after her fall, the plaintiff called the defendant attorney's office seeking legal advice. That day a secretary in the attorney's office returned the plaintiff's call and advised her to write a letter to the store stating that she had fallen in the store and received an injury. The secretary also arranged a medical examination for the plaintiff with the store's insurance company. Finally, the secretary instructed the plaintiff to write a letter to the defendant attorney requesting legal assistance.

Following that instruction, the plaintiff personally delivered a letter to the attorney's secretary. In this letter, the plaintiff described her fall. The letter ended with the question, "Would you kindly advise me legally?" The secretary misfiled this letter.[6] The defendant did not discover the

_____

[5] The defendant attorney's affidavit adds nothing of significance to the facts found by the master. The defendant does state that he did not enter into a fee agreement with the plaintiff on this matter. The plaintiff does not dispute this.

[6] The secretary placed this letter in a file containing papers concerning the defendant attorney's past representation of the plaintiff on a domestic relations matter. The agreement or consent of an attorney to represent a prospective client in a particular matter does not create an attorney-client relationship as to other affairs of the client. See *Delta Equip. & Constr. Co.* v. *Royal Indem. Co.*, 186 So. 2d 454 (La. 1966).

letter until June, 1974, after the statute of limitations on the plaintiff's tort claim had run.

From the date she delivered the letter in 1971 until June, 1974, the plaintiff did not visit the defendant attorney's office or speak with him.[7] In the interim, the plaintiff called the attorney's office a number of times. Each time, the plaintiff was told that her calls would be returned. But the attorney never returned any of her calls.[8]

In February, 1978, the plaintiff filed a complaint in the Superior Court alleging that she retained the attorney to represent her concerning the fall at the store. In his answer, the defendant attorney denied that he was ever retained to represent the plaintiff in regard to the fall.

Pursuant to Mass. R. Civ. P. 56 (c), 365 Mass. 824 (1974), only "if . . . there is no genuine issue as to any material fact [is] . . . the moving party . . . entitled to a judgment as a matter of law." See *Attorney Gen.* v. *Bailey,* 386 Mass. 367, 371 (1982); *Hub Assocs.* v. *Goode,* 357 Mass. 449, 451 (1970). Thus, the issue is whether the material facts found by the master, require, as a matter of law, a determination that there was no attorney-client relationship before the statute of limitations ran. We conclude that it was improper to grant the defendants' motion for summary judgment.

"It is the general rule that an attorney's liability for malpractice is limited to some duty owed to a client. . . . Where there is no attorney/client relationship there is no breach or dereliction of duty and therefore no liability." *McGlone* v. *Lacey,* 288 F. Supp. 662, 665-666 (D. S.D. 1968). See *Kurtenbach* v. *TeKippe,* 260 N.W.2d 53 (Iowa 1977). An attorney-client relationship need not rest on an express contract. An attorney-client relationship may be

---

[7] Early in 1974, after the statute of limitations had run, the plaintiff did speak with Gerald McAuliffe, an associate in the defendant attorney's office. Mr. McAuliffe told the plaintiff that he could not find the file in her case.

[8] In 1971, the defendant attorney was associated with a law firm in Germany, where he devoted considerable time to military cases. When out of the country, the attorney called his office every day.

implied "when (1) a person seeks advice or assistance from an attorney, (2) the advice or assistance sought pertains to matters within the attorney's professional competence, and (3) the attorney expressly or impliedly agrees to give or actually gives the desired advice or assistance. . . . In appropriate cases the third element may be established by proof of detrimental reliance, when the person seeking legal services reasonably relies on the attorney to provide them and the attorney, aware of such reliance, does nothing to negate it." *Kurtenbach* v. *TeKippe, supra* at 56. Where reasonable persons could differ as to the existence of an attorney-client relationship, this issue must be resolved by the trier of fact. *Kurtenbach* v. *TeKippe, supra* at 57.

On appeal, the plaintiff advances two theories in support of her claim that there was an attorney-client relationship between the plaintiff and the attorney.[9] First, the plaintiff argues that the secretary had actual authority to take the actions that she did. Therefore, the secretary's knowledge of the plaintiff's request for legal assistance can be imputed to the attorney. When an agent acquires knowledge in the scope of her employment, the principal, here the attorney, is held to have constructive knowledge of that information. *Bockser* v. *Dorchester Mut. Fire Ins. Co.*, 327 Mass. 473, 477-478 (1951). *Union Old Lowell Nat'l Bank* v. *Paine*, 318 Mass. 313, 323-324 (1945). There is a question for the jury whether the secretary's actions concerning the plaintiff's request for the attorney's services were within the scope of her employment. The plaintiff argues that, because the attorney had constructive knowledge of her problem, she reasonably relied on him to provide her with legal assistance. Citing *Kurtenbach* v. *TeKippe, supra,* the plaintiff asserts that, therefore, her reliance established an attorney-client relationship.

---

[9] The plaintiff did not argue before the trial judge or on appeal that, under the doctrine of respondeat superior, the attorney is liable for the negligence of his secretary even if there is no attorney-client relationship. See *Galvan* v. *McCollister*, 224 Kan. 415 (1978). We therefore do not reach this issue.

The plaintiff also contends that the secretary had apparent authority to establish an attorney-client relationship on behalf of the defendant. Apparent authority "results from conduct by the principal which causes a third person reasonably to believe that a particular person . . . has authority to enter into negotiations or to make representations as his agent." *Hudson* v. *Massachusetts Property Ins. Underwriting Ass'n,* 386 Mass. 450, 457 (1982), quoting W.A. Seavey, Agency § 8D, at 13 (1964). Applying the doctrine of apparent authority to this case, the plaintiff claims that the attorney placed his secretary in a position where prospective clients might reasonably believe that she had the authority to establish an attorney-client relationship.[10] There is a question of fact for the jury whether the attorney permitted his secretary to act as she did, thereby creating the appearance of authority.

Under either theory, the question whether there was an attorney-client relationship depends on the reasonableness of the plaintiff's reliance. The application of the reasonable person standard is uniquely within the competence of the jury. See 10 C.A. Wright & A.R. Miller, Federal Practice and Procedure § 2729, at 560 (1973).

We find support for both of the plaintiff's theories in the Canons of Ethics and Disciplinary Rules Regulating the Practice of Law, S.J.C. Rule 3:07, as appearing in 382 Mass. 768 (1981), and particularly Canon 3, a stricture against the unauthorized practice of law.[11] The Canons can be interpreted using the Ethical Considerations of the

---

[10] The attorney specifically instructed his secretaries not to negotiate a fee or retainer fee with any client. The secretary may not have had any actual authority to establish attorney-client relationships on his behalf.

However, even if the secretary lacked actual authority to create attorney-client relationships, she may still have had apparent authority. See *Holdam* v. *Middlesex Supply, Inc.,* 355 F.2d 122 (1st Cir. 1966); *Globe Ticket Co.* v. *Boston Retail Grocers' Ass'n,* 290 Mass. 235 (1935).

[11] We recognize that the Canons of Ethics and Disciplinary Rules Regulating the Practice of Law, S.J.C. Rule 3:07, as appearing in 382 Mass. 768 (1981), apply after an attorney-client relationship has been established. Nevertheless, we view them as instructive.

American Bar Association, Code of Professional Responsibility and Canons of Judicial Ethics (1970). Ethical Consideration 3-6 states: "A lawyer often delegates tasks to clerks, secretaries, and other lay persons. Such delegation is proper if the lawyer maintains a direct relationship with his client, supervises the delegated work, and has complete professional responsibility for the work product. This delegation enables a lawyer to render legal service more economically and efficiently." The supervised use of lay persons in a legal office is intended to permit their involvement in most matters, but not in the direct practice of law. See ABA Comm. on Professional Ethics, Formal Op. 316 (1967).

Therefore an attorney should not permit lay persons even to appear to form the attorney-client relationship with a prospective client, because that is part of the practice of law. See ABA Comm. on Professional Ethics, Informal Op. 998 (1967) (advising against a lay employee conducting the initial interview of a client if the client does not confer with the attorney soon afterwards). It is a question for the jury whether the attorney allowed his secretary to act as she did, and whether he knew what she was doing. We believe that an attorney who places his lay employees in a position which may deceive prospective clients as to the attorney's willingness or ability to represent them may be liable for malpractice for the negligence of those employees.[12]

---

[12] We decline to follow *McGlone* v. *Lacey*, 288 F. Supp. 662, 665 (D. S.D. 1968), in which the judge held that, although a partner of the defendant attorney told a prospective client that the defendant would give the client's legal matter his attention, his statement did not create an attorney-client relationship. The judge stated that the attorney's silence alone did not constitute the attorney's acceptance of employment. We believe that an attorney has a duty to prevent any mistaken reliance on his silence. See S.J.C. Rule 3:07, DR 6-101 (A) (3), as appearing in 382 Mass. 783 (1981), which states that a lawyer "shall not: . . . [n]eglect a legal matter entrusted to him."

Therefore, there are factual issues for the jury whether the attorney in this case put himself in a position in which he should be liable to the plaintiff. We reverse the judgment of dismissal and remand the case to the Superior Court for trial.

*So ordered.*