USCA1 Opinion

 

 [NOT FOR PUBLICATION] UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT  ____________________ No. 95-1933 INGRID A. M. FRANCIS AND ROBERT FRANCIS, Plaintiffs, Appellants, v. DAVID GOODMAN AND KAREN DUNNETT, Defendants, Appellees.  ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Edward F. Harrington, U.S. District Judge] ___________________ [Hon. Reginald C. Lindsay, U.S. District Judge] ___________________  ____________________ Torruella, Chief Judge, ___________ Coffin, Senior Circuit Judge, ____________________ and Cyr, Circuit Judge. _____________  ____________________ Loretta M. Smith, with whom Charles A. Goglia, Jr. and William E. ________________ ______________________ __________ Ryckman, Jr. were on brief for appellants. ____________ Hilary B. Miller for appellees. ________________  ____________________ August 1, 1996  ____________________ CYR, Circuit Judge. Following our remand for findings CYR, Circuit Judge. _____________ of fact and conclusions of law, see Francis v. Goodman, 81 F.3d 5 ___ _______ _______ (1st Cir. 1996), the district court found that Rose had established the predicate for diversity jurisdiction under 28 U.S.C. 1332(a)(1) (1994), id. at 6-7. As its determination ___ that Rose intended to remain a New York domiciliary is not clearly erroneous, Lundquist v. Precision Valley Aviation, Inc., _________ _______________________________ 946 F.2d 8, 11 (1st Cir. 1991), we affirm the district court judgment.  The district court considered the appropriate factors in determining Rose's domiciliary intent. See Bank One, Tex., ___ ________________ N.A. v. Montle, 964 F.2d 48, 50 (1st Cir. 1992) (listing ____ ______ factors), opinion after remand, 974 F.2d 220 (1st Cir. 1992). _______ _____ ______ Although Rose owned a home, practiced law, and lived on Nantucket for a number of years, he owned a home in New York (where he kept his most valuable possessions), retained his bar membership and driver's license in New York, and maintained the bulk of his bank and investment accounts, filed tax returns, and continued to vote in New York by absentee ballot, see id. (voter registration a ___ ___ "weighty" factor). The district court thus possessed diversity jurisdiction. See Anderson v. City of Bessemer City, 470 U.S. ___ ________ _____________________ 564, 574 (1985) ("Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.").  In 1984, Francis and her son inherited a commercial property on Main Street, Nantucket. She met Rose in August 1985 2 and an intimate relationship developed. Rose obtained a Benetton clothing franchise in late 1985, and asked Francis if Rose's company, Nanben Corporation ("Nanben"), could operate a retail store at Francis' Main Street location. Individually represented by retained counsel, the parties negotiated and entered into a lease on March 6, 1986. During this time, Francis began living with Rose. She worked with him at the store as well. In November 1989, Nanben failed to pay the monthly rent due Francis. Rose explained that he owed Benetton for spring and summer inventory. In April 1990, with Nanben four months behind in its rent, Francis told Rose: "You owe me a lot of money here, and I want to do something. Should I do something?" Rose responded, "No, you don't have to do anything. Trust me. Just have patience. You will get paid." Despite similar assurances from Rose, Nanben continued to lag behind in rent payments through April 1991.  In late June 1991, Francis and Rose stopped living together but remained friends. Rose had handled various legal matters for Francis during their intimate relationship, but in June 1992 Francis again consulted the attorney who had negotiated the store lease, and decided to initiate a summary eviction action against Nanben. Nanben promptly sought refuge in the bankruptcy court, and although Francis eventually regained possession of the store, she was unable to collect a $92,898 judgment for unpaid rent and costs, which precipitated this diversity action charging Rose with malpractice for failing to 3 advise Francis to seek independent representation regarding the unpaid store rent. 4 The action was tried before the district court (Lindsay, J.), without a jury. Following the case in chief, the district court ruled that Francis had never established an attorney-client relationship with Rose. The court entered judgment for Rose under Fed. R. Civ. P. 52(c) ("If during a trial without a jury a party has been fully heard on an issue and the court finds against the party on that issue, the court may enter judgment as a matter of law against that party with respect to a claim . . . that cannot under the controlling law be maintained . . . without a favorable finding on that issue. . . ."). Francis appealed.  All agree that Massachusetts law governs the Francis malpractice claim. See One Nat'l Bank v. Antonellis, 80 F.3d ___ ______________ __________ 606, 608 (1st Cir. 1996) (court ordinarily applies governing law agreed upon by parties). As a general rule, an attorney cannot be found liable for malpractice absent a breach of duty to the client. DeVaux v. American Home Assur. Co., 444 N.E.2d 355, 357 ______ ________________________ (Mass. 1983). Nor is it sufficient to show that an attorney- client relationship existed as to an unrelated matter; rather, the plaintiff must prove that the relationship existed with respect to the act or omission which forms the basis for the malpractice claim. Symmons v. O'Keeffe, 644 N.E.2d 631, 639 _______ ________ (Mass. 1995); Robertson v. Gaston Snow & Ely Bartlett, 536 N.E.2d _________ __________________________ 344, 348-49 (Mass.) (prior representation insufficient), cert. _____ denied, 493 U.S. 894 (1989).  ______ Absent an express agreement to provide legal services, 5 an attorney-client relationship may be implied when "(1) a person _______ seeks advice or assistance from an attorney, (2) the advice or assistance sought pertains to matters within the attorney's professional competence, and (3) the attorney expressly or ___ ___ ________ impliedly agrees to give or actually gives the desired advice or _________ ______ __ ____ __ ________ _____ ___ _______ ______ __ assistance." DeVaux, 444 N.E.2d at 357 (emphasis added) __________ ______ (quotation omitted). In appropriate cases, the third element may be established by proving that the attorney knew that the plaintiff reasonably relied on the attorney to provide legal services, but did nothing to prevent the detrimental reliance. Sheinkopf v. Stone, 927 F.2d 1259, 1264-68 (1st Cir. 1991).1 _________ _____ We find no clear error. Francis never told Rose that she wanted legal advice with respect to the store rent, nor did Rose bill her for such legal advice. See Symmons, 644 N.E.2d at ___ _______ 639. At trial, Francis conceded that Rose was merely a tenant at the time she spoke with him concerning the unpaid store rent. On the other hand, she testified that she thought Rose was her _______ attorney when she asked him during the same conversation whether she should "do something" about the store rent. But see ___ ___ Sheinkopf, 927 F.2d at 1265 (requiring more than "subjective, _________ unspoken belief" that person is acting in legal capacity).  ____________________ 1Whether an attorney-client relationship exists presents an issue of fact under Massachusetts law. Page v. Frazier, 445 ____ _______ N.E.2d 148, 152 (Mass. 1983). Thus, Francis must demonstrate clear error in the district court finding that there was no attorney-client relationship. See Fed. R. Civ. P. 52 advisory ___ committee's note to 1991 Amendment (mandating "clear error" review of factual findings); Atlantic Track & Turnout Co. v. ______________________________ Perini Corp., 989 F.2d 541, 543 (1st Cir. 1993) (same).  ____________ 6 Moreover, Francis testified: "I believed that [Rose] would give me good advice since we were an item."  On this record, we cannot disturb the well-supported district court finding that Rose had no reason to know that Francis was seeking legal advice from him, as opposed to an appraisal of his company's financial ability, as her tenant, to pay the store rent, and that the trust Francis placed in Rose was due, in large part, to their intimate relationship. Thus, the district court correctly concluded that the failure to establish an attorney-client relationship with respect to the store rent foreclosed Francis' malpractice claim. See Symmons, 644 N.E.2d ___ _______ at 639; DeVaux, 444 N.E.2d at 357. ______ Affirmed. The parties shall bear their own costs. ________ _______________________________________ SO ORDERED. SO ORDERED. __________ 7