**Maria RODRIGUEZ, Individually and as Administratrix of the Estate of Jose Rodriguez, Plaintiff,**

v.

**Victor MONTALVO and Lori Oltman, Defendants.**

**No.  CIV.A.02–40139–NMG.**

United States District Court,
D. Massachusetts.

Jan. 12, 2004.

Jonathan L. Mannina, Legal Assistance Corporation of Central Mass., Worcester, MA, for Plaintiff.

Patrick R. Bunnell, Dombrowski, Averit Bunnell, Leominster, MA, for Defendants.

## MEMORANDUM & ORDER

GORTON, District Judge.

In this action for declaratory judgment, equitable and legal relief, the Plaintiff Maria Rodriguez ("Rodriguez") moves to attach real estate of Defendant Victor Montalvo ("Montalvo") and to disqualify Montalvo's counsel, David P. Florio of the law firm Philips & Florio. The facts concerning each motion are stated as alleged and are drawn from the Plaintiffs' complaint and from the respective motions before this Court. The Court will address the motions *seriatim.*

### I. *The Motion to Attach Real Estate*

#### A. *Factual Background*

In December 1998, Rodriguez rented a first-floor apartment located at 47 Salem Street, Fitchburg, Massachusetts ("the premises") from Montalvo. Her son, Jose, had Duchenne's Muscular Dystrophy and was a quadriplegic. Jose therefore used a wheelchair to ambulate and (beginning in early 2001) needed a ventilator to breathe. Rodriguez requested permission to make modifications to the dwelling in order to accommodate Jose's disability. Specifically, Rodriguez requested permission to install a permanent ramp at her own expense and offered to have access to the dwelling restored to its original condition

when she moved out. That request was made several times during the tenancy but was consistently refused by Montalvo. Instead, Montalvo allowed Rodriguez to use temporary and easily removable boards over the stairs to access the apartment.

The makeshift ramp was, however, problematic according to Rodriguez. First, it was unsafe during the winter because the boards were not affixed to the outside steps and thus were not secure in icy or snowy conditions. Second, even when the ramp was secure, it was of little help because two people were still required to assist Jose into the house, one from behind and one from the front. Third, Jose began using a medically-necessary ventilator in June, 2001 which required a special wheelchair that carried Jose and his ventilator, allowing him to be connected to the ventilator at all times. The new wheelchair was too big for both the temporary ramp and the doorway to the premises. As a result, in order for Jose to gain access to the premises, he needed to be disconnected from the ventilator and carried into the home.

From that time forward, Jose was afraid to leave his home because he had to be disconnected from his ventilator in order to do so. As a result, he rarely left the apartment except for necessary medical appointments. He suffered various minor injuries from having to be carried in and out of the premises on those occasions. Jose died on June 11, 2002.

Rodriguez sued Montalvo and his girlfriend, Lori Oltman ("Oltman"), who was allegedly the broker of the premises. Rodriguez alleged statutory violations of the Fair Housing Act, 42 U.S.C. § 3601–31, and the Massachusetts Anti–Discrimination Statute, M.G.L. c. 151B, and common law counts of intentional and negligent infliction of emotional distress, negligent failure to train and su-

pervise and negligent retention. Rodriguez now moves this Court to attach Defendants' real estate up to the amount of $125,000.

## B. *Legal Analysis*

■ Federal Courts may authorize the attachment of real estate during the course of an action "under the circumstances and in the manner provided by the law of the state in which the district court is held." Fed.R.Civ.P. 64. Massachusetts law grants discretion to district courts to allow for pretrial attachment of a defendants' property

> only after notice to the defendant and hearing and upon a finding by the court that there is a reasonable likelihood that the plaintiff will recover judgment, including interest and costs, in an amount equal to or greater than the amount of the attachment over and above any liability insurance shown by the defendant to be available to satisfy the judgment.

Mass. R. Civ. P. 4.1(c). There is no dispute that Defendants are currently without liability insurance available to satisfy the judgment so the only issues before the Court are whether Rodriguez is reasonably likely to succeed on the merits and, if so, the extent of her monetary recovery.

Rodriguez contends that there is a reasonable likelihood that she will recover $162,200 which includes at least $75,000 for compensatory damages, $75,000 for attorney's fees, $5,000 for costs and $7,200 for punitive damages. Defendants challenge those figures and dispute that Rodriguez is likely to succeed on the merits.

■ Under the Fair Housing Act, unlawful discrimination includes

> a refusal to permit, at the expense of the handicapped person, reasonable modifications of existing premises occupied or to be occupied by such person if such

modifications may be necessary to afford such person full enjoyment of the premises except that, in the case of a rental, the landlord may where it is reasonable to do so condition permission for a modification on the renter agreeing to restore the interior of the premises to the condition that existed before the modification, reasonable wear and tear excepted. 42 U.S.C. § 3604(f)(3)(A).

To hold Defendants liable for discriminating on the basis of Jose's disability, Rodriguez must therefore show that Defendants refused a modification of the premises that was both reasonable and necessary to afford Jose full enjoyment thereof. *See id.; see also* M.G.L. c. 151B, § 4(7A)(1) (similarly defining discrimination on the basis of handicap).

■ Rodriguez proposed several modifications to the premises, including 1) removing a portion of the rear porch, 2) affixing a wheelchair ramp to the rear door and widening the rear door frame and 3) converting a window into a door with a wheelchair ramp. Defendants refused to authorize any of those modifications.[1] Rodriguez offered to pay for any of the foregoing modifications, as required by the relevant statutes, and also to pay to return the premises to its previous condition at the end of her tenancy. Such modifications, especially in light of Rodriguez's offer to pay for them, were reasonable and Defendants do not contend otherwise.

The requested modifications, with respect to at least the period between June, 2001 to June, 2002 while Jose required the use of a ventilator at all times, were likely necessary to afford Jose full enjoyment of the premises. He could not access the apartment during that time without being disconnected from the ventilator and had to be carried into and out of the premises. The proposed but unauthorized modifications would have eliminated that situation and afforded Jose the full enjoyment of the premises because his ingress and egress would have been less precarious and therefore more often utilized. Moreover, the modifications would not have caused any financial or administrative burden to Defendants. Rodriguez, therefore, has a reasonable likelihood of succeeding on the merits of both her federal and state law discrimination claims.

In their opposition to Rodriguez's motion, Defendants have argued lack of subject matter jurisdiction, expiration of the statute of limitations, "preclusion" (which the Court interprets as *res judicata*) and laches. The only argument that may have merit is *res judicata* but the Court is unpersuaded that *res judicata* applies here based on the proceedings of the Fitchburg Housing Court.

Rodriguez also alleges various common law counts, including intentional and negligent infliction of emotional distress, negligent failure to train and supervise and negligent retention. If Rodriguez succeeds on the merits of her statutory claims, of which there is a reasonable likelihood, she is also likely to recover some compensation for her and her son's emotional distress.

Rodriguez contends that she will likely recover $162,200 as outlined above. Nevertheless, she seeks to attach real estate only to the amount of $125,000. Based on the alleged harm described above, a more reasonable figure for Rodriguez's anticipated recovery is $75,000, including $50,000 for compensatory damages and $25,000 for fees and costs pursuant to 42

---

1. Defendants claim that they authorized the implementation and use of the two removable boards but the relevant inquiry is whether they refused any other reasonable and necessary modifications, not whether they allowed any modifications.

U.S.C. § 3613(c). Punitive damages, although allowed by statute, *see id.,* are more speculative than compensatory damages and will not be presumed at this stage. If punitive damages are awarded, however, Rodriguez's proposed amount of $7,500 based on the annual rent for the premises is not unreasonable.

The Court is also concerned that Montalvo may have encumbered the property since this action was commenced in an effort to avoid an attachment in satisfaction of a possible judgment against him. At the hearing on October 17, 2003 ("the October 17 hearing"), Plaintiff's counsel offered some evidence that Montalvo had mortgaged the premises in the amount of $30,000, registered it as his homestead and become a tenant in common on another property. Based on those actions and the above reasoning, an attachment of Defendants' real estate in the amount of $75,000 will be authorized.

## II. *The Motion to Disqualify Defense Counsel*

### A. *Factual Background*

In July 2001 Rodriguez contacted the Massachusetts Justice Project ("MJP") seeking legal assistance in her dispute with Montalvo and various collateral matters related to her rental property. Upon contacting MJP, at which defense counsel David Florio and Anna Phillips were then employed, Rodriguez spoke to paralegals Flor Cintron ("Cintron") and Keyda Montalban ("Montalban"). In her initial conversation, Rodriguez gave Cintron basic information pertaining to her legal problems concerning accessibility to Rodriguez's apartment. Cintron told Rodriguez that MJP would send her written information regarding her legal rights and that she should call back after reviewing that information.

After Rodriguez had done as instructed, she called MJP and spoke to Montalban. Rodriguez conveyed relevant financial information to determine her eligibility for MJP's services and background information regarding the facts of her case. The parties dispute whether Rodriguez disclosed information material to her state and federal claims against Montalvo. Attorneys Florio and Phillips were employed as staff attorneys at MJP at the time of Rodriguez's initial contact, but left in 2002 to form their own law firm which now represents Montalvo. While employed at MJP, Attorney Phillips was responsible for reviewing Montalban's intake file but the parties dispute the extent of that review function.

With Rodriguez's consent, MJP subsequently referred her case to the Legal Assistance Corporation of Central Massachusetts ("LACCM") for legal assistance, which subsequently led to the filing of this action. Following the October 17 hearing, Plaintiff's counsel submitted for *in camera* review a copy of Rodriguez's entire MJP written file. That file includes MJP's intake sheet pertaining to Rodriguez, the initial follow-up letter and a computer printout of MJP's intake sheet and an eligibility checker with financial and other information. Pending before the Court is Rodriguez's motion to disqualify Florio as the Defendants' counsel on the grounds that MJP's earlier advice to Rodriguez constitutes a conflict of interest.

### B. *Legal Analysis*

In deciding whether to disqualify an attorney based on a prior representation, Massachusetts courts have attempted to reconcile an individual's right to counsel of his choice with the obligation of maintaining the highest standards of professional conduct and the scrupulous administration of justice. *See Mailer v. Mailer,* 390

Mass. 371, 373, 455 N.E.2d 1211, 1212 (1983). Massachusetts Rules of Professional Conduct 1.9 and 1.10 govern conflicts of interest in the representation of a former client. Rule 1.9 provides, in relevant part, that:

A lawyer shall not knowingly represent a person in the same or a substantially related matter in which a firm with which the lawyer formerly was associated had previously represented a client (1) whose interests are materially adverse to that person; and (2) about whom the lawyer had acquired information...that is material to the matter, unless the client consents after writing. Mass. R. Prof. C. 1.9(b) (emphasis added).

Rule 1.10 extends Rule 1.9's prohibition to any lawyer associated in a firm with a potentially conflicted lawyer. Mass. R. Prof. C. 1.10(a).

■ The relevant inquiry in a motion to disqualify based on a former representation is into the degree of relevance between the two representations, i.e., "whether the subject matter of the two representations is substantially related." *See Borges v. Our Lady of the Sea Corp.*, 935 F.2d 436, 439–40 (1st Cir.1991) (identifying the proper inquiry as, "[C]ould the attorney have obtained confidential information in the first suit that would have been relevant to the second[?]").

■ Massachusetts courts have elaborated on this premise, explaining that under the "substantial relationship" test, a subsequent representation is proscribed on the grounds that the later suit, by virtue of its relationship to the former suit, exposes the attorney to "an intolerably strong temptation to breach his duty of confidentiality to the former client." *E.g. Bays v. Theran*, 418 Mass. 685, 691, 639 N.E.2d 720, 724 (1994), *citing Note, Developments in the Law: Conflicts of Interest in the*

*Legal Profession*, 94 Harv. L.Rev. 1244, 1318 (1981). The former client is not required to prove that the attorney actually misused the information, but only need show that the tempting situation existed because of an attorney-client relationship that was established in the former representation, and that the "former and current representations are both adverse and substantially related." *Bays*, 418 Mass. at 691, 639 N.E.2d at 724 (internal citation omitted).

■■ Moreover, if a non-lawyer paralegal established a confidential relationship with a client, that relationship may be imputed to the attorney supervisor and consequently to the firm as a whole. The comment to Mass R. Prof. C. 5.3 provides that non-lawyer assistants such as paralegals "act for the lawyer in the rendition of the lawyer's professional services." The Supreme Judicial Court has held, at least in the context of a legal malpractice action, that knowledge by the attorney's employees acquired in the scope of their employment is attributable to the attorney. *See Miller v. Mooney*, 431 Mass. 57, 60, 725 N.E.2d 545, 548 n. 2 (2000), *citing DeVaux v. American Home Assurance Co.*, 387 Mass. 814, 818, 444 N.E.2d 355, 358 (1983). Finally, courts examining whether the actions or representations of an attorney's agent may be imputed to the attorney principal typically focus on the reasonable belief of the third party to whom such representations have been made. *See Kansallis Finance Ltd. v. Fern*, 421 Mass. 659, 670, 659 N.E.2d 731, 737 (1996).

■ In the instant case, an *in camera* review of MJP's files demonstrates that Montalban provided legal advice to Rodriguez such that Rodriguez reasonably could have relied upon the proffered advice during her dispute with Montalvo. Without divulging the specific information submit-

ted to the Court, the intake file and subsequent correspondence from MJP to Rodriguez contain material information of a confidential nature. Rodriguez would have been objectively reasonable in following the advice provided by MJP and therefore would have been reasonable in imputing to MJP, as a whole, the existence of an attorney-client relationship.

Relevant case law supports the conclusion that Rodriguez established an attorney-client relationship with MJP by virtue of her communications with Cintron and Montalban. Although Rodriguez did not communicate directly with Attorney Phillips, Montalban was in a position such that Rodriguez might reasonably believe that Montalban had authority to establish an attorney-client relationship. *See DeVaux*, 387 Mass. at 819, 444 N.E.2d at 358. Although the court in *DeVaux* left to the jury the question of whether the attorney "permitted his secretary to act as she did, thereby creating the appearance of authority[,]" *id.*, it is undisputed in this case that MJP permitted Montalban to advise Rodriguez on the appropriate course of action in her dispute with Montalvo. Indeed, Defendants admit that the handling of this case was typical of MJP's ordinary course of business. If this Court acknowledges Rodriguez's reliance interest, as is appropriate, it becomes apparent that Montalban acted as Phillips's agent. *See Kansallis Finance Ltd.*, 421 Mass. at 670, 659 N.E.2d at 737; *see also Sheinkopf v. Stone*, 927 F.2d 1259, 1265 (1st Cir.1991)(emphasizing reliance interest). Thus, as Phillips's agent, Montalvo possessed the authority to advise Rodriguez.

■ The final step in this chain of reasoning leads to the conclusion that the establishment by Rodriguez of an attorney-client relationship with MJP disqualifies Attorney Florio by virtue of his former association with that legal services organi-

zation. *See* Mass. R. Prof. C. 1.10(a). The substantial relationship between the subject matters (indeed their identity) raises the specter that information gleaned from Rodriguez's communications with MJP could be used against her by her adversary in the very same action. *Cf. Mailer v. Mailer*, 390 Mass. 371, 374–75, 455 N.E.2d 1211, 1213 (1983)(holding that the public nature of the information conveyed did not merit disqualification of later counsel in the same matter). Although this case presents a somewhat novel context for the application of the foregoing principles, the fact that Ms. Rodriguez sought and obtained advice from a low-income legal services provider fails to alter the fundamental conflict of interest analysis.

### ORDER

In accordance with an for the reasons set forth in the foregoing memorandum, Plaintiff's Motion to Attach Real Estate (Docket No. 13) is **ALLOWED** to the amount of $75,000 and her Motion to Disqualify Defense Counsel (Docket No. 25) is also **ALLOWED**.

**So ordered.**