NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

16-P-76                                            Appeals Court

THOMAS CESSO  vs.  GARY OWEN TODD.

No. 16-P-76.

Essex.     January 6, 2017. - August 28, 2017.

Present:  Vuono, Milkey, & Henry, JJ.


Attorney at Law, Malpractice, Attorney-client relationship,
     Withdrawal, Signing of pleadings and other court papers.
     Practice, Civil, Summary judgment.



     Civil action commenced in the Superior Court Department on
November 16, 2011.

     The case was heard by Timothy Q. Feeley, J., on a motion
for summary judgment.


     Mary-Ellen Manning for the plaintiff.
     Nancy M. Reimer for the defendant.


     HENRY, J.  The plaintiff, Thomas Cesso, appeals from the

summary judgment in favor of the defendant, Gary Owen Todd, on

Cesso's claims of legal malpractice and misrepresentation.

Because genuine issues of material fact exist on the summary

judgment record, especially whether an attorney-client

relationship continued to exist between Todd and Cesso after July 25, 2008, we vacate in part and affirm in part.

Background.  We summarize the undisputed facts drawn from the summary judgment record; to the extent the record includes disputed evidence, we consider that evidence in the light most favorable to Cesso, against whom summary judgment entered.  See Ritter v. Massachusetts Cas. Ins. Co., 439 Mass. 214, 215 (2003).

The parties do not agree on when the attorney-client relationship began or ended.  For purposes of this opinion, we note their differences and, where material, resolve differences in the light most favorable to Cesso.  Cesso contends that his attorney-client relationship with Todd, an attorney at the law firm Todd & Weld LLP (Todd & Weld), commenced on May 28, 2008, when Cesso spoke with Todd to discuss the possibility of Todd taking over representation of Cesso in a divorce action that was set for trial shortly thereafter.  On June 6, 2008, Cesso met with Todd to continue the discussion in person.  On June 30, 2008, Todd introduced Cesso to another Todd & Weld attorney, John Earl Quigley, who would assist Todd in the representation.[1]

---

[1] Todd told Cesso he would have Quigley assist because Quigley (1) had previously clerked for the judge who was presiding over the divorce action, (2) had once worked for the lawyer representing Cesso's wife, and (3) lived "near the Essex Probate Court."

On July 3, 2008, Cesso's prior attorney withdrew from the divorce action. On July 7, 2008, Cesso asked Todd and Quigley to send him a client agreement and to enter their appearances in the divorce action. This is when Todd contends the representation commenced. On July 9, 2008, both Todd and Quigley filed appearances for Cesso in the divorce action.

Sixteen days later, on July 25, 2008, Quigley left Todd & Weld to start his own firm.[2] Todd alleges that he and Quigley told Cesso on July 21, 2008, that Quigley was leaving the firm and that Cesso could decide whether to stay with Todd or be represented only by Quigley going forward. Cesso disputes that such a meeting occurred and, for purposes of summary judgment, we will treat all of the facts in the light most favorable to Cesso and assume such a meeting did not occur.

What is undisputed is that on July 28, 2008, Todd and Todd & Weld filed a notice of withdrawal of appearance dated July 25, 2008, in the divorce action. Cesso denies that he was served with this notice, and we assume he was not.[3] On July 25, 2008, Todd sent Cesso a separate letter (hereinafter, the July 25 letter) stating:

---

[2] Cesso disputes whether Quigley left voluntarily or was terminated.

[3] The certificate of service itself indicates that only opposing counsel was served with the notice, but a cover letter indicates Cesso was copied, though without listing an address.

"As you may know, John E. Quigley has decided to leave Todd & Weld LLP to open his own practice, effective July 28, 2008. . . .

"Although [Quigley] and I will continue to work together and consult on your case, your hard files will need to be transferred to [Quigley's] office in Newburyport.

"It is our usual procedure to have clients agree to this in writing, and as such, I would ask that you please execute this correspondence where indicated and return to my attention as soon as possible so that we may forward your file to [Quigley's] office."

The July 25 letter was mailed to the wrong address and Cesso did not receive it until Quigley hand-delivered it on August 6, 2008. Cesso signed the letter that day.[4]

Cesso does not dispute that he had no in-person communication with Todd after July 25, 2008, and the last date that Todd & Weld billed him for professional services was July 25, 2008. During June and through July 25, 2008, Todd billed 4.9 hours to the case and Quigley, while at Todd & Weld, billed 30.3 hours to the case.

Cesso sent several electronic mail messages (e-mails) to Quigley between July 31 and August 21, 2008, on which he copied Todd. Cesso requested in e-mails on July 31 and August 19 that

---

[4] Todd's claim that Cesso's signature on the July 25 letter was "unequivocal and not conditioned on Todd remaining involved in the matter" is unpersuasive where Todd stated in that letter that he would continue to work with Quigley and consult on Cesso's case. The issue is not, as Todd claims, that "[Todd] did not agree to continue as Cesso's attorney." The question is whether Todd clearly communicated that he was ceasing to be Cesso's attorney.

Todd appear with Quigley at upcoming hearings in the matter. In an August 4, 2008, e-mail, Cesso requested a conference call with Quigley and Todd "to discuss team strategy," evincing Cesso's belief that Todd was still part of the team. Yet that same e-mail demonstrates that no later than August 4, 2008, Cesso knew that Todd was "withdrawing." Cesso asked Quigley, "What are the roles between [Quigley] and [Todd] going forward in light of [Todd] withdrawing, ongoing joint collaboration, and resources of Todd and Weld?" Todd did not respond to any of these e-mails. The record includes no e-mails from Cesso to Todd after August 21, 2008.

Cesso maintains that Todd continued to consult on the case after July 28, 2008, even if he did not bill Cesso for the work. For example, Todd noted on a time sheet that he spoke with Quigley about Cesso's case for three-tenths of one hour on August 5, 2008, though he did not bill Cesso. Similarly, Cesso points to the cover letter that accompanied Todd & Weld's July, 2008, bill, which states that any "retainer balance will be applied to future legal services." Todd asserts that his telephone call with Quigley was about the file transfer, the bill cover letter was a form letter, and he neither intended to bill nor billed Cesso further.[5]

---

[5] Because of disputes on admissibility, which we need not resolve, we do not rely on e-mails between Cesso and Quigley

In e-mails between Todd and Quigley dated September 12, 2008, Todd asked, "[H]ow did it go with Cesso[?]" and Quigley responded with details about the trial.  Quigley also offered that Todd could "sit in and take an easy witness," adding that Cesso "would love to see [Todd] there."[6]

There is no dispute that Cesso never communicated to Todd or the Probate and Family Court any objection to Todd's filing a notice of withdrawal in the divorce action.  Cesso never objected to Todd's lack of response to any of the seven e-mails copied to Todd after July 28, 2008, and ceased communicating with Todd substantively about the case after August 21, 2008. Todd was not present in court for the first two days of trial, September 8 and 9, 2008.[7]  Cesso did not object to Todd's absence.

On September 12, 2008, Quigley e-mailed Cesso requesting additional funds to conclude the divorce action.  On the same

that discussed Quigley speaking with Todd about the case. Similarly, we do not rely on two pleadings that Quigley filed with Todd's and Todd & Weld's signature blocks after July 28, 2008.  Neither indicates it was sent to Cesso.

[6] In addition, Quigley billed Cesso for a telephone call conferring with Todd about "case status, strategy, etc.," on August 1, 2008, and another telephone call to Todd on August 26, 2008.

[7] The trial continued on December 8 and 15, 2008; December 16, 2008, was the final day of the trial.

day, Cesso e-mailed Todd & Weld and requested that the firm forward the unused portion of his retainer to Quigley.

Following the disposition of the divorce action, Cesso filed suit in Superior Court against Quigley and his new firm, alleging legal malpractice.[8] Cesso later amended his complaint to add claims of legal malpractice and misrepresentation against Todd. Todd subsequently filed a motion for summary judgment, which was allowed. Following the entry of judgment in favor of Todd pursuant to Mass.R.Civ.P. 54(b), 365 Mass. 820 (1974), Cesso appealed.

Discussion. "In reviewing a grant of summary judgment, we assess the record de novo and take the facts, together with all reasonable inferences to be drawn from them, in the light most favorable to the nonmoving party," Pugsley v. Police Dept. of Boston, 472 Mass. 367, 370-371 (2015) (quotation omitted), to determine whether "all material facts have been established and the moving party is entitled to a judgment as a matter of law." Miller v. Mooney, 431 Mass. 57, 60 (2000), quoting from Augat, Inc. v. Liberty Mut. Ins. Co., 410 Mass. 117, 120 (1991). The entry of summary judgment will be upheld where there are no genuine issues of material fact and the nonmoving party "has no

---

[8] Quigley and his firm are not parties to this appeal.

reasonable expectation of proving an essential element of its case."  Miller, supra.

1.  Legal malpractice after July 28, 2008.  Todd contends that undisputed facts negate an essential element of Cesso's malpractice claim:  the existence of an attorney-client relationship that continued past Todd's notice of withdrawal from the divorce action.[9]  We disagree.  A trier of fact could, but need not, find that the relationship continued after July 28, 2008, even if Todd was no longer formally counsel of record in the divorce action.

An attorney-client relationship may rest on an express contract or be implied as a matter of law.  DeVaux v. American Home Assur. Co., 387 Mass. 814, 817-818 (1983).  An attorney-client relationship may be implied "when (1) a person seeks advice or assistance from an attorney, (2) the advice or assistance sought pertains to matters within the attorney's professional competence, and (3) the attorney expressly or impliedly agrees to give or actually gives the desired advice or assistance. . . .  In appropriate cases the third element may be established by proof of detrimental reliance, when the person seeking legal services reasonably relies on the attorney to

---

[9] Todd dates this notice of withdrawal as July 25, 2008, the date it was signed.  For purposes of summary judgment, we treat it as July 28, 2008, the date it was filed with the court.

provide them and the attorney, aware of such reliance, does nothing to negate it." Id. at 818, quoting from Kurtenbach v. TeKippe, 260 N.W.2d 53, 56 (Iowa 1977).

Here, it is undisputed that there was, for a period of time, an express attorney-client relationship between Todd and Cesso. Cesso argues that because Todd filed a notice of withdrawal rather than a motion for permission to withdraw following the procedure outlined in Mass.R.Dom.Rel.P. 11(c), his withdrawal was necessarily invalid and did not end the express attorney-client relationship, leaving Todd liable for any malpractice committed after he "abandoned" the client. We disagree.

We have said that "[r]ules of procedure are not just guidelines. Their purpose is to provide an orderly, predictable process by which parties to a law suit conduct their business. Any litigant [or attorney] who fails to turn a procedural corner squarely assumes the risk that the rules infraction will be used against him and the rule vigorously enforced by the trial judge." USTrust Co. v. Kennedy, 17 Mass. App. Ct. 131, 135 (1983). However, management of a case is committed to the discretion of the trial judge, Greenleaf v. Massachusetts Bay Transp. Authy., 22 Mass. App. Ct. 426, 429 (1986), and trial judges have discretion to forgive noncompliance with a rule. See Zabin v. Picciotto, 73 Mass. App. Ct. 141, 165 (2008) (trial

judges have discretion to forgive failure to comply with rule where failure does not affect reasonable expectation of opposing party or cause imposition on court). Here, Cesso continued to have counsel, he knew more than one month before trial that Todd had withdrawn formally as counsel in the matter, and Cesso did not object. Todd's notice of withdrawal was effective to end his formal appearance in the divorce action on July 28, 2008.[10] That, however, does not end our inquiry.

The question at issue here is whether Todd's attorney-client relationship with Cesso continued after July 28, 2008. The motion judge found that, as a matter of law, Todd ceased being Cesso's attorney in the divorce action on the date Todd signed the notice of withdrawal. We disagree. On this record, "reasonable persons could differ as to the existence of an attorney-client relationship," so "this issue must be resolved by the trier of fact." DeVaux, supra. Todd argues that DeVaux is distinguishable because Cesso makes no argument concerning how Cesso relied to his detriment on Todd's silence; however, this misapprehends Cesso's argument that he believed the more experienced Todd was the architect of the case strategy and was continuing to work in an advisory role.

---

[10] Cesso's reliance on Global NAPs, Inc. v. Awiszus, 457 Mass. 489 (2010), is unavailing. There, the law firm did not challenge that it had an attorney-client relationship with the plaintiff when the alleged malpractice occurred. Id. at 501.

Todd expressly told Cesso that, after Todd's withdrawal as counsel of record, Todd and Quigley would "continue to work together and consult on [Cesso's] case." This was consistent with the established division of labor, with Todd setting strategy and Quigley executing that strategy. Cesso took actions, such as copying Todd on e-mails, corroborating that Cesso thought Todd was still working on the case. Resolving all evidentiary inferences in favor of Cesso, Todd took no steps to disabuse Cesso of the notion that he (Todd) was still working on the case, albeit in a behind-the-scenes role. Instead, Todd sent a billing cover letter that a reasonable person could read to indicate that he would continue to work and bill on the case. The record, though thin, is enough to permit -- but not require -- the finder of fact to draw the inference that Cesso reasonably believed that Todd was continuing to consult in the background. See Bowers v. P. Wile's, Inc., 475 Mass. 34, 37 (2016), quoting from Mullins v. Pine Manor College, 389 Mass. 47, 56 (1983) ("Summary judgment for the defendant is not appropriate if 'anywhere in the evidence, from whatever source derived, any combination of circumstances could be found from which a reasonable inference could be drawn in favor of the plaintiff [as the nonmoving party]'").

Of course, as the motion judge accurately stated, "even a question of fact may be decided as a matter of law when no

rational view of the evidence permits a contrary finding." See, e.g., Goulart v. Canton Hous. Authy., 57 Mass. App. Ct. 440, 441 (2003) ("a judge may decide the issue [of negligence] as matter of law when no rational view of the evidence permits a finding of negligence"). We agree that as a matter of law any attorney-client relationship between Cesso and Todd ended no later than September 12, 2008, when Cesso, who concedes he is a sophisticated business person, knew Todd was not appearing at trial, knew Todd was not responding to any direction or communication from Cesso, and asked Todd & Weld to transfer the remaining retainer to Quigley.[11] At that point, Cesso could not have reasonably expected to continue to receive legal services from Todd. Moreover, no legal malpractice claim can lie against Todd as a matter of law for the conduct of the trial where Cesso knew that Todd was not trying the case.[12] Similarly, any court filings after July 28, 2008, cannot form the basis of a malpractice claim against Todd, as Todd had withdrawn from the

---

[11] Cesso requested in an e-mail dated September 12, 2008, that the remaining retainer be transferred to Quigley. The actual transfer of funds was posted to Quigley's firm's account on September 15, 2008.

[12] The only malpractice Cesso alleges related to conduct prior to July 28, 2008, is mismanagement of the private investigator. See part 2, infra. In different circumstances, if a plaintiff could tie malpractice at trial to pretrial decision-making, conduct at trial might be actionable against an attorney who did not try the case. Here, Cesso has not done so.

matter and Quigley, as the attorney of record, was responsible for these filings.[13]

In short, summary judgment was inappropriate on the legal malpractice claim with regard to the existence of an attorney-client relationship prior to September 12, 2008. On remand, Cesso's malpractice claim must, accordingly, be based on action or inaction by Todd from the start of the attorney-client relationship to no later than September 12, 2008, and cannot be based on the trial of the divorce case or pleadings filed after July 28, 2008. On this record, a trier of fact could reasonably conclude that the relationship ended earlier, even before July 28, 2008.

2. Legal malpractice on or before July 28, 2008. The motion judge also granted summary judgment on conduct prior to July 28, 2008. Cesso alleges that before July 28, 2008, Todd mishandled the supervision of a private detective. The record contains disputes of fact whether Todd gave instructions to the private detective and regarding the impact of the surveillance of Cesso's wife in the divorce action. Even if Todd merely continued the surveillance set in motion by an earlier attorney, Cesso is still permitted to argue that that level of

---

[13] We express no opinion on a situation where the attorney of record was under instructions from the client to file pleadings in the action as directed by the consulting attorney because the record does not support such a claim in this case.

surveillance was not within the standard of care.  Accordingly, summary judgment on this portion of the claim must be vacated.[14]

3.  Misrepresentation.  Cesso alleges that Todd misrepresented his intention to represent Cesso in the divorce action only to abandon Cesso while continuing to make it appear as though he (Todd) intended to continue to represent Cesso. The motion judge found that any such representations by Todd did not survive the termination of the attorney-client relationship on July 25, 2008.  As discussed above, we disagree with the judge's conclusion regarding whether the legal representation ended on that date as a matter of law.  However, we agree that summary judgment properly entered for Todd on this claim.

Todd contends that undisputed facts negate an essential element of Cesso's misrepresentation claim because Cesso fails to identify a false statement made by Todd.  See Miller, 431 Mass. at 60.  There is no evidence that Todd induced Cesso to leave his former attorney.  The record is undisputed that Cesso had a significant disagreement with his then-attorney and the decision to leave was his own.  Cesso claims that Todd "secretly withdrew" his appearance in the divorce action, yet the August 4, 2008, e-mail shows that Cesso knew Todd withdrew.  Cesso

---

[14] Because of our resolution of this claim, we need not reach Cesso's arguments that the motion judge should have allowed Cesso's motion to strike Todd's reply in support of summary judgment.

claims Todd "switched out attorneys," but Quigley was involved before Cesso signed a client agreement with Todd & Weld, and Quigley performed the bulk of the work from the outset.

As for Cesso's claim that Todd falsely claimed he would consult on the case after he withdrew his formal appearance, if Todd's statement constituted a "statement[] . . . of conditions to exist in the future, or of matters promissory in nature," it generally would "not [be] actionable." Yerid v. Mason, 341 Mass. 527, 530 (1960). Cesso would have to prove more: "statements of present intention as to future conduct may be the basis for a fraud action if . . . the statements misrepresent the actual intention of the speaker and were relied upon by the recipient to his damage." McEvoy Travel Bureau, Inc. v. Norton Co., 408 Mass. 704, 709 (1990). On summary judgment, any inference that could be drawn in favor of the nonmoving party "must be based on probabilities rather than possibilities and cannot be the result of mere speculation and conjecture." Id. at 706 n.3. Here, Cesso has failed to identify any evidence in the summary judgment record that Todd misrepresented his actual intention.[15] This is in contrast to McEvoy, where the evidence

_____

[15] Cesso argues for example that because Quigley prepared a case list in early June and met with his department head, Todd knew that Quigley was leaving Todd & Weld before Todd even introduced Quigley to Cesso. This is nothing more than rank speculation. Attorneys routinely prepare case lists and meet with their supervisors.

supported a conclusion that while Norton Company was giving McEvoy assurances that a termination clause was "inoperative" and "meaningless," it was in fact exploring an arrangement with another vendor that would make its contract with McEvoy unnecessary or less necessary.  Id. at 708.  We thus affirm the dismissal of the misrepresentation claim.  See Hawthorne's, Inc. v. Warrenton Realty, Inc., 414 Mass. 200, 210 n.6 (1993) (appellate court may affirm judgment on grounds different from those advanced by judge).

Conclusion.  We vacate so much of the judgment as granted summary judgment to Todd on the legal malpractice claim for any action or inaction through September 12, 2008.  The remainder of the judgment is affirmed.

So ordered.