Murphy, Ernest B., J.
The plaintiffs, Paul Mauro and Linda Mauro (hereinafter, the “Mauros”) have brought the present action for breach of contract, negligence, and professional malpractice against the defendant, Hadlock Law Offices, P.C. (hereinafter, “Hadlock”). Hadlock presided over the closing of a refinancing between the Mauros and Greenpoint Mortgage Funding, Inc. (hereinafter, “Greenpoint”). Following the refinancing, the wrong pre-existing mortgages were paid off. The Mauros allege that this failure creates a cause of action against Hadlock. The defendant moves for summary judgment against Mauro, arguing that there was (1) no attorney-client relationship between the parties, (2) no contract between the parties, and (3) no duty from the firm to the Mauros. After hearings on the motion, and for the following reasons, the defendant’s motion for summary judgment is DENIED.

FINDINGS OF FACT

The following facts are either undisputed or are taken in the light most favorable to the plaintiffs.
Prior to the ineffective refinancing which is the center of this dispute, the plaintiffs were subject to three mortgages: one mortgage on property in Colorado held by Greenpoint in the amount of $432,000; and two mortgages on one properly in Massachusetts held by Irwin Union Bank & Trust Company (hereinafter, “Irwin”) and Greenpoint in the aggregate amount of $800,000.[2] The purpose of the transaction was a refinancing of the two Massachusetts mortgages, then at an interest rate of approximately 8%, in order to take advantage of lower interest rates.
At the closing, on October 30, 2002, in which Hadlock acted as counsel, the Mauros signed multiple documents detailing the intended disbursement of the $800,000 refinancing mortgage. Under a document entitled “Broker Funds Disbursement Instructions,” Hadlock was directed to disburse $431,882.31 to Greenpoint and $367,697.46 to Irwin. Three days after the closing, Hadlock disbursed the funds resulting in the payment of the Colorado Greenpoint mortgage and the Irwin mortgage rather than the two Massachusetts mortgages. Subsequently, when the error was discovered, Hadlock informed the Mauros of the mistake and promised to correct it.[3]
Hadlock alleges that it never acted as an attorney on the behalf of the Mauros; instead it suggests that its sole client in the transaction was Greenpoint. Under the disbursement instructions, Hadlock was to receive $2,323.27. Furthermore, the Mauros have presented evidence that Hadlock was paid $650 for its services to them.[4]

CONCLUSIONS OF LAW

Summary judgment shall be granted where there are no genuine issues as to any material fact and where the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); Cassesso v. Comm’r of Corr., 390 Mass. 419, 422 (1983); Cmty. Nat'l Bank v. Dawes, 369 Mass. 550, 553 (1976). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, and that the summary judgment record entitles the moving party to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). The moving party may satisfy this burden either by submitting affirmative evidence that negates an essential element of the opposing party’s case or by demonstrating that the opposing party has no reasonable expectation of proving an essential element of his case at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. Gen. Motors Corp., 410 Mass. 706, 716 (1991). Once the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts establishing the existence of a genuine issue of material fact. Pederson, 404 Mass. at 17. The nonmoving party cannot defeat a motion for summary judgment by resting on his pleadings and mere assertions of disputed facts. LaLonde v. Eissner, 405 Mass. 207, 209 (1989). In deciding a motion for summary judgment, the court may consider pleadings, depositions, answers to interrogatories, admissions on file and affidavits. Cmty. Nat’l Bank, 369 Mass. at 553.

I. Malpractice

Hadlock moves for summary judgment on the Mauros’ malpractice claim, arguing that there was no attorney-client relationship. To succeed on such a claim of malpractice against an attorney, a plaintiff must demonstrate “that the attorney failed to exercise reasonable care and skill in handling the matter for which the attorney was retained [ ]; that the client has incurred a loss; and that the attorney’s negligence is the proximate cause of the loss.” Colucci v. Rosen, Goldberg, Slavet, Levenson & Wekstein, P.C., 25 Mass.App.Ct. 107, 111 (1987) (citations omitted). As a threshold issue, the plaintiff must also prove that an attorney-client relationship in fact existed: “Where there is no attorney/client relationship there is no breach or dereliction of duty and therefore no liability.” DeVaux v. American Home Assurance Co., 387 Mass. 814, 817-18 (1983) (citation omitted); see also Miller *155 v. Mooney, 431 Mass. 57 (2000). An attorney-client relationship may be express or implied; the relationship is implied “when (1) a person seeks advice or assistance from an attorney, (2) the advice or assistance sought pertains to matters within the attorney’s professional competence, and (3) the attorney expressly or impliedly agrees to give or actually gives the desired advice or assistance.” Miller, 431 Mass. at 61; DeVaux, 387 Mass. at 817-18 (quotation marks and citations omitted) (“In appropriate cases the third element may be established by proof of detrimental reliance, when the person seeking legal services reasonably relies on the attorney to provide them and the attorney, aware of such reliance, does nothing to negate it.”).[5] “Where reasonable persons could differ as to the existence of an attorney-client relationship, this issue must be resolved by the trier of fact.” DeVaux, 387 Mass. at 818.
Although Hadlock denies representing the Mauros, the Mauros have presented sufficient evidence to give rise to a dispute of material facts. The Mauros allege that Hadlock represented them. To that end, the Mauros have demonstrated uncontroverted evidence that Hadlock received funds on their behalf on two occasions: first, through a disbursement according to the refinancing, and second, through a payment of $650 for services. In addition, the defendant’s behavior after the error may be indicative of an attorney-client relationship: Hadlock admitted error and declared its intention to remedy the situation. Although that offer to remedy is not conclusive on the ultimate existence of an attorney-client relationship, had there been no duty Hadlock would have had no obligation to cooperate. Furthermore, even if there was no attorney-client relationship ab initio, a jury could find that the Mauros detrimentally relied on the February 24, 2003, letter, thereby creating an attorney-client relationship at that time. Therefore, the motion for summary judgment must be denied as to the Mauros’ claim for malpractice.

II. Breach of Contract

In a contract action the plaintiff has the burden of proving the following elements by a preponderance of the evidence: (1) an offer; (2) an acceptance; (3) consideration; (4) breach; and (5) damages. Canney v. New England Tel. & Tel Co., 353 Mass. 158, 164 (1967) (plaintiffs burden to show existence of contract). Evidence of the offer and acceptance must include all essential terms and conditions with which the parties have agreed to be bound, in reasonable detail and certainty. Kaufman v. Lennox, 265 Mass. 487, 488 (1929). “All of the essentia] terms of a contract must be sufficiently definite so that the nature and extent of the obligations of the parties can be ascertained.” Simons v. American Dry Ginger Ale Co., Inc., 335 Mass. 521, 523 (1957), citing Caggiano v. Marchegiano, 327 Mass. 574, 579 (1951). “It is well settled that an agreement need not be in writing in order to be enforceable.” ESO, Inc. v. Kasparian, 32 Mass.App.Ct. 731, 733-34 (1992).
For the reasons set forth above, the plaintiffs have raised sufficient facts to create a genuine dispute regarding the parties’ relationship. To the extent that a jury finds a valid attorney-client relationship, the cause of action for breach of contract lies.[6]

III. Negligence

Finally, the plaintiffs allege that Hadlock was negligent independent of any relationship between the parties. “In any negligence cause of action, there are four elements that must be established by the plaintiff ... in order to prevail. The [plaintiff] must show: (1) a legal duty owed by defendant to plaintiff; (2) a breach of that duty; (3) proximate or legal cause; and (4) actual damage or injury.” Commonwealth v. Angelo Todesca Corp., 62 Mass.App.Ct. 599, 606 (2004), review granted, 443 Mass. 1105 (citations and quotation marks omitted). “An attorney owes a duty to nonclients who the attorney knows will rely on the services rendered.” Robertson v. Gaston Snow & Ely Bartlett, 404 Mass. 515, 524 (1989). Although potential conflicts of interest between the nonclient and a client should be considered, the presence of conflicts are not fatal to the examination: “ ‘Where an attorney is also under an independent and potentially conflicting duty to a client,’ we are less likely to impose a duty to nonclients.” Id., quoting, Page v. Frazier, 388 Mass. 55, 63 (1983).
In the present case, the plaintiffs allege that Hadlock was negligent when the firm paid the wrong mortgages. Both parties agree that Hadlock was under a duty to pay off defined mortgages.[7] Both parties agree that Hadlock was in possession of the Mauros’ funds with the express purpose of distributing the funds to pay off mortgages. In addition, the Mauros allege that the wrong mortgages were paid. Following the consummation of the refinancing, there is evidence that the proper disbursement of funds was not contrary to the interests of Greenpoint, and therefore duly may lie. See also King v. Trs. of Boston Univ., 420 Mass. 52, 59-60 (1995); Stuart v. D.N. Kelley & Son, 331 Mass. 76, 77-78 (1954); Rourke v. Cadillac Auto. Co., 268 Mass. 7, 8 (1929). Furthermore, there is evidence that Hadlock has acknowledged that it paid off the wrong mortgages in error. Therefore, the plaintiffs have presented sufficient evidence to justify the claim of negligence.

ORDER

Based on the foregoing reasons, it is hereby ORDERED that the defendant’s motion for summary judgment is DENIED.

The defendant disputes the identity of the holders of the Massachusetts mortgages, and suggests one was held by Washington Mutual Home Loans rather than by Greenpoint. The mortgage in question was of a similar value as the Colorado Greenpoint loan. Nevertheless, in a letter dated *156 Februaiy 24, 2003, Hadlock wrote that, “(a]t the time of closing, the Mauros had two loans with Greenpoint Mortgage: one in Colorado and one in Massachusetts.”

In the letter dated Februaiy 24, 2003, cited earlier, the defendant stated that, “Hadlock Law Offices, PC paid off the Colorado mortgage [ ] in error.” Hadlock offered further assistance in rectifying the situation.

Hadlock alleges that it never represented the Mauros in a legal capacity. It does not deny, however, that it received money from them.

The defendant cites Lamare v. Basbanes, 418 Mass. 274, 276 (1994), for the proposition that: “It is well-established that attorneys owe no duty to their client’s adversary.” In Lomare, however, the Supreme Judicial Court considered whether an attorney owes an implied duty of reasonable care to a nonclient. The defendant conflates two separate issues: first, whether there is an implied attorney-client relationship, and second, whether absent an attorney-client relationship there is an implied duty of reasonable care to a nonclient. The latter issue will be discussed below.

The Mauros additionally allege that, in the absence of a direct contractual relationship, they are third-party beneficiaries of a contract between Hadlock and Greenpoint. Although the defendants challenge this basis of the Mauros’ breach of contract claim, this court need not reach that issue at this time.

As discussed above, in footnote 2, the defendant contests whether the refinancing documents properly identified the mortgages to be paid off.